**MALONEY v. COLLISON et al.**

Civ. A. No. 1451.

United States District Court,
D. Delaware.

Feb. 24, 1954.

Edward W. Cooch, Jr., and Edwin D. Steel, Jr., of Morris, Steel, Nichols & Arsht, Wilmington, Del., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., H. Brian Holland, Asst.

Atty. Gen., Andrew D. Sharpe and Robert Margolis, Sp. Assts. to the Atty. Gen., for defendants.

LEAHY, Chief Judge.

Suit was brought against former Collectors and present Director of Internal Revenue to recover income taxes and interest plaintiff paid under deficiency assessments. For 1946, $27,296.23 was in issue, and for 1947, $16,596.89, both plus interest. Validity of the assessments hinges on the bona fides of a partnership formed October 15, 1945, by plaintiff, his wife and son.

The case was tried by jury. Plaintiff's motion for a directed verdict was denied. The court submitted five interrogatories [1] to the jury. Each was answered against plaintiff. Verdict was rendered for defendant. Under F.R. 50 (b) and 59(a), 28 U.S.C., plaintiff moved to set aside verdict and judgment and have judgment entered in his favor, or in the alternative, for a new trial.

█ 1. At roots of this case lie two determinations of intent. One, is whether plaintiff had a bona fide donative intent to sever his ownership from two-thirds of his business and transfer it to his wife and son. The other, is whether there was a bona fide intent of the parties to join together as partners. Both are not legal but factual issues. Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659; Lamb v. Smith, 3 Cir., 183 F.2d 938. Both have been specifically answered by the jury against plaintiff. The basic error of plaintiff's arguments to the contrary is his assumption

---

[1] "1. Was Elizabeth G. Maloney in good faith joined together with her husband, William J. Maloney, Sr., for the purpose of presently carrying on business and sharing in the profits or losses, and acting with a business purpose, really and truly intended to join together in the then present conduct of a partnership enterprise known as the Maloney Leather Company throughout the taxable year 1946?"

The second interrogatory asked the same question about William J. Maloney, Jr. The third and fourth were the same but referred to the taxable year 1947, one being as to the wife and the other to the son.

The fifth read: "Did Mr. Maloney make valid and bona fide gifts to his wife and son which were used and invested in the Maloney Leather Company business? You will answer that question 'Yes' or 'No' as to each of the two persons as follows: (a) As to Mrs. Maloney; (b) as to Mr. Maloney, Jr.

evidentiary facts are uncontroverted and reasonable minds can draw only inferences favorable to him. The opposite is true. Evidence permitted two opposing conclusions to be drawn, and the jury had ample basis on which to base its verdict for defendants. Plaintiff neglects to allow the probative force of cross-examination. Because plaintiff's witnesses predominated and because defendants' witnesses did not directly contradict the making of a gift or partnership formation, plaintiff contends his evidence is uncontradicted, thus binding the court to enter judgment for him. Such a narrow view disregards the issue of credibility of witnesses raised by cross-examination. The record contains instances of discrepancies in testimony of plaintiff's witnesses from which the jury may have decided to discredit their evidence of gift and partnership as incompatible with their hidden intent. Both deed of gift and partnership articles took effect on October 15, 1945, and the jury's inquiry into intent was directed to those simultaneous events.

Exemplary of discrepancies are these: 1. Plaintiff's gross exaggeration of the time spent by the son in the business;[2] 2. the conflicting testimony concerning the son's weekend work in the plant;[3] 3. the naive attempt to attach business significance to a boy's experiments with a toy chemistry set;[4] 4. the testimony concerning family withdrawals[5] and good will valuation.[6] Separately, these points may well be trifling; but, the whole line of cross-examination of the plaintiff's three principal witnesses provided the jury with a yardstick by which to measure their credibility and to answer the interrogatories unfavorably to plaintiff.

2. An additional buttress of the jury verdict is the substantial doubt plaintiff sustained the "heavy burden [of proof] on the taxpayer to show the bona fide intent of the parties to join together as partners." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 744, 69 S.Ct. 1210, 1215. True, the paper formalities were practically pat, but the three principal parties were vague, hesitant, and unconvincing when cross-examined as to details.[7] Intent, although subjective as a state of mind, is of necessity ascertained from observable actions and course of conduct.[8] Plaintiff's repeated assertions during trial of the bona fide donative and partnership intents alone did not sustain his burden of proof. Actions of the parties attendant upon the mental process were, at least, equivocal, even when considered most favorably to taxpayer. Under plaintiff's own theory, the jury was justified in finding the burden of proof of the "gift" unsustained. Mr. Maloney's dominion, control, and use of the "donated" property was just as complete after the "gift" as when he was sole owner. His "advice" to the "donees" on their use of the property and profits was followed without debate. Actually, the "donees" had little choice in the first instance but to leave their "gifts" in kind with the partnership since undivided thirds of the business were "given". The jury had reason on the record to pierce the paper curtain and see plaintiff, in reality, had parted with no substantial interest in the property, and was in the same position with respect to it taxwise after the transfer as before. The jury's findings on these disputed issues are final when, as here, supported by the evidence. Davis v.

2. Record, pp. 12, 27, 101, 102, 315, Gov't Ex. 6.

3. R. 12, 27, 311–314, 104–108, 305, 324–325.

4. R. 12, 315, 316, 321, 323, 324, 138, 328.

5. R. 362–364.

6. R. 184–185, 358–359.

7. E. g. R. 255–264, 309, 329–336, 142–144, 154–158.

8. See Attorney General v. Drummond, 1 Drury & Warren 353, 368, where Lord Chancellor Sugden said:

"Tell me what you have done under such a deed, and I will tell you what that deed means."

Commissioner, 3 Cir., 161 F.2d 361; cf. Lamb v. Smith, supra.

3. No sufficient reason is presented to prompt grant of a new trial. Plaintiff's objections to the instructions stem from the belief they bound him to prove, as an essential of his case, both capital and personal services had been contributed to the business by the wife and son. Under the Culbertson decision, supra, either is sufficient, and the charge actually does not read counter to that opinion. The court's definition of "business purpose"[9] as used in the interrogatories should not have been given, plaintiff contends, because under the Culbertson case "a business purpose must be found if the alleged partners contributed to the partnership either their services or capital of which they were the true owners".[10] Again, plaintiff assumes he proved validity of his gift to wife and son. This is not so. It was a matter for the jury to decide from all the evidence. Since the gift was in dispute, so also was the later contribution of the donated property by the wife and son to the partnership. Not having become owners of the property, they could not transfer it to the business. If they had obtained bona fide ownership, the court's definition of "business purpose" would have been satisfied by their contribution, if such it was, of the essential two-thirds interest to the partnership. After a valid gift, the business would have had a third of its original property and, of course, would have received benefit upon a re-transfer to it of the two-thirds. The objection is without merit.

4. Attack is also made upon the instructions concerning the elementary propositions "income must be taxed to those who earn it" and "who primarily earned it."[11] I have reviewed the charge on these aspects, not merely isolated sentences, and find it correct, without prejudicial error, and fair to plaintiff. The instructions do not make the validity of the partnership depend on the wife and son performing personal services. An unbiased review of the charge reflects proper instructions of the sufficiency of either capital or services contributions to the partnership. Without warrant, plaintiff twists and overplays the meaning of "earn", limiting it to a reward for personal services. One's contribution of capital to a partnership may as well be said to be earning income of the business as personal services, as the instructions, fairly apprised the jury.[12] An appendage to plaintiff's "earn" argument is his contention the court's use in one place[13] of "and" instead of "or" compounded the prior error. This typographical error appeared in defendants' prayer No. 11. Plaintiff's counsel took no exception to it, and it passed unnoticed by all parties. However, the correct disjunctive was given the jury in at least four later passages of the charge.[14] This slip is no ground for a new trial on either of two grounds. At worst, it constituted harmless error under Federal Rule 61 because of its later quadruple correction. Further, since correction would readily have been made had counsel specified it in time, the principle of Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645, precludes a new trial premised only on a general exception.

5. The penultimate reason plaintiff proffers for a new trial concerns the colloquy[15] between court, counsel, and Mrs. Maloney about the legal effect of joint tenancy of realty. The court's spontaneous statement of its impression of the law to Mrs. Maloney

---

9. "When I speak of a 'business purpose', I mean whether any purpose for the benefit of the partnership was served by the alleged inclusion of the wife and son as partners herein." Chg. 22.

10. Plaintiff's Reply Brief, p. 20.

11. Chg. pp. 17–21.

12. E. g. Chg. 28.

13. Chg. 18: "capital *and* services".

14. Chg. 22, 24, 29, 30.

15. R. 219–219a; 287–288; 365–367.

may—I am not convinced—run counter to Delaware's decisional law. However, at the first mention of the matter, in the presence of the jury, the court indicated its uncertainty by saying, "I will look it up." More importantly, I also flatly stated, "It has nothing to do with the matter under discussion", and plaintiff's counsel agreed.[16] The discussion concerned realty. The partnership agreement is devoid of mention of realty. No realty was invested in the partnership,[17] and the bona fides of the gift was irrelevant. There is no serious prejudicial error at this phase. Mrs. Maloney's credibility was not impugned. If anything, only her legal knowledge was questioned. Moreover, the court acknowledged the veracity of the view she held[18] and minimized the incident in the jury's presence.[19]

6. Plaintiff's remaining argument charges the court with hastening and coercing the jury in reaching its verdict. This does not convince me of error, nor does the whole record[20] show it to be such. At 10 o'clock P.M., the jury reported it had no "definite answer on any of your five questions". The court specifically refused a juror's offer to give the numerical division and countered by asking if there was "substantial disagreement". Whatever may be the rule to protect the accused in criminal cases, I am convinced such was a proper question under the circumstances of this civil suit. Cf. United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506, 508. Moreover, the juror's answer to the question was unresponsive, expressing only the belief some conclusion could be reached within the "next hour". In this optimism, another juror joined. The court then asked, "Do you think I ought to send you back for a half-hour?" The jury agreed.

At 11:40 o'clock P.M., the foreman volunteered information of progress, of switching "from an almost tie vote to a practically unanimous vote on one of the first four questions, and I would think it reasonable to expect that there would be considerable correlation in the answers to those four questions." The foreman continued without comment from the court, praising the jurors, saying, "Our relationships are excellent. It is certainly not hopeless that we can't work with each other, and although I would like very much to go home tonight, I think that we have gone to the expense and trouble that we have, and frankly I think it is my duty to society that we continue to struggle with this thing." Originating with the jury without prompting from the court, this splendid spirit of cooperation disproves the charge of judicial coercion. The court's reply to the jury's offer, indeed eagerness, to continue deliberations was an appreciative "I won't hold you after midnight". Thereupon the foreman asked permission to disclose the numerical split. The court said it was "willing to be told if counsel are". Plaintiff's counsel agreed. At the time, defendants' counsel objected to hearing the jury reveal "which way it is going", and that precise information was withheld. Plaintiff's counsel had the same opportunity to protest. There being no objection from counsel, the foreman advised there was an 11 to 1 vote at the moment on "one of the first four questions", having been 7 to 5 at the time of the 10 P.M. report. The court then erred in saying the answer to the first interrogatory would automatically decide answers to the following three.[21] However, the slip did not deceive the foreman for he immediately answered, "We think they [the interrogatories] are very close together", exhibiting an awareness automatic answers for 2, 3

16. R. 219a.

17. R. 201, 220.

18. R. 366.

19. R. 366–367.

20. Chg. 37–42.

21. The court soon thereafter admitted to the jury this was an error and clearly corrected it. Chg. 41.

and 4 would not be found by answering the first question. Once again, the court said it would discharge the jury at midnight, but then went to some length to emphasize no criticism was directed at the jurors: "I respect so much the view of each and every one of you, and I know you are sincere in your point of view. You have given your time in the performance of your duty of your American citizenship, and I do not feel unkindly about your inability to reach a verdict at all. I realize that each of you is trying to be loyal to your own point of view sincerely. So go back and make one more try. I want you back at 12 o'clock."[22] There is no taint of coercion in that language. On the contrary, it anticipates a hung jury and gives the dissenting juror both reason to cling to his honest conviction and the certainty of a midnight reprieve from the efforts of other jurors to convert him to their views. I think the court's control of this jury was well within the permissive bounds of advice and instruction. Plaintiff decries the rapidity with which the jury reached its verdict in its last session, arguing this proved the midnight time limit was prejudicial. I do not agree. I know only one juror remained to be convinced for unanimity. I know the jury must have acquired intimate familiarity with the testimony and evidence from its long deliberation. I must face the very close correlation of the first four interrogatories, all to be answered from consideration of the same type of evidence and testimony from the same witnesses. I must realize an issue of intent lay at the base of the fifth interrogatory just as it did of the first four; that gift and partnership were simultaneous events of October 15, 1945, so intertwined the jury would be driven to some consideration of both in their long session; and extended debate on the fifth may well have been unnecessary for complete jury accord. To uphold plaintiff in this argument would be to encourage counsel to divide the time of jury deliberations by the number of interrogatories or issues submitted and argue coercion or compromise if one were found to have received more attention than that quotient dictated. Substantial justice cannot exist in such a mathematical strait jacket.

Plaintiff's motions are denied.