HYMAN REIVER AND COMPANY, a Delaware corporation, Defendant-Appellant, v. RICHARD V. ROSE, Plaintiff-Appellee.

(*December* 23, 1958.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Irving Morris* and *H. G. Rubenstein* (of the firm of Cohen and Morris) for appellant.

*Robert V. Huber* for appellee.

Supreme Court of the State of Delaware, No. 26, 1958.

BRAMHALL, J.:

This appeal relates (1) to the sufficiency of the evidence to sustain a judgment for plaintiff for commissions alleged to be due by defendant to plaintiff; (2) to the refusal of the trial judge to charge the jury with respect to a fraud alleged to have been committed by plaintiff in computing his commission; (3) to the failure of the trial judge to inform counsel of the receipt of a note from the jury prior to giving the jury supplementary instructions in response to the information contained in the note; and (4) to the supplementary charge itself in the light of the information set forth in the note.

The essential facts, viewed in the light most favorable to plaintiff, are as follows:

Defendant is a Delaware corporation, engaged in the sale of floor covering, formica, kitchen cabinets and other similar

merchandise. Plaintiff, a school teacher, was employed by defendant, part time, as a salesman on a strictly commission basis. Plaintiff's duties were to make contact with the prospective purchaser, estimate the cost of the proposed job, obtain acceptance of the estimate and see that the purchaser was billed in accordance with the agreement between plaintiff, acting on behalf, of defendant, and the purchaser. Plaintiff's commission depended upon the amount of the markup in the estimate computed by plaintiff and accepted by the customer. If this markup did not exceed 40% plaintiff's commission was to be 5% of the total amount of the contract; if above, the commission was to be 10%.

In the course of plaintiff's employment he was instructed by defendant to contact the Wilson Line relative to work to be performed on seven of its boats. Plaintiff thereupon made an estimate of the cost of the work to be performed thereon. He testified that the markup on the total contracts exceeded 40%. Plaintiff's estimate was accepted by the Wilson Line and the work was performed by defendant, who was paid the full billing price by the Wilson Line.

Defendant's version of the contract was somewhat different. Defendant testified that plaintiff's percentage depended on the type of customer with whom defendant was dealing. If the customer did a large amount of business with the company, such as a building contractor, or if the job was open to competitive bidding, the markup was usually 40%, in which case the salesman was entitled to a commission of only 5%. If the customer was a "retail customer", the percentage of the markup was usually 60%, in which case the salesman was entitled to a commission of 10%. However, if a later profit analysis showed that the completed job had not yielded the expected percentage of profit due to faulty estimation on the part of the salesman, the salesman's commission was lowered or eliminated. Defendant denied that orders were given to plaintiff on all seven boats, contending that except for three boats, orders for the remaining four were given after the termination of plaintiff's employment.

The jury rendered a verdict for plaintiff against defendant for the full amount of plaintiff's claim, with interest, upon which in due course judgment was entered. Defendant appeals.

We shall discuss first the question of whether or not the verdict of the jury that plaintiff was entitled to a commission of 10% on all seven boats was warranted by the evidence.

Under this heading defendant makes three contentions: (1) that plaintiff's commission was 5% and not 10%; (2) that plaintiff did not secure contracts for all seven boats; and (3) that plaintiff was not entitled to a commission on any boat on which the work was done after he left defendant's employ.

As a basis for defendant's contentions, defendant charged that plaintiff figured the cost sheets upon which the estimates were based correctly, but that, after submitting the figures thereon to defendant, plaintiff deliberately changed them by erasing certain cost figures and writing in lower figures in place thereof for the purpose of showing a greater markup or gross profit, which, if correct, would have entitled plaintiff to a commission of 10% instead of 5%. Defendant also avers that plaintiff secured contracts for only three boats, the other four having been received after the termination of plaintiff's employment by defendant. Defendant further asserts that plaintiff by voluntarily leaving defendant's employ because defendant would not give him a commission of 10%, to which defendant contends plaintiff was not entitled, waived his right to any future commissions which might arise from the job.

Defendant's contention that plaintiff was entitled to a commission of only 5% is based largely upon documentary proofs, that is, the work sheets offered in evidence by plaintiff. These sheets showed that some of the figures thereon had been changed. Defendant testified that the changes were made subsequent to the time when the estimates were submitted by plaintiff to defendant for approval. Defendant stated that these changes were for the purpose of setting up a false profit on the job, thereby, increasing the percentage of commission to

which plaintiff would have been entitled. Plaintiff denied that he had changed the work sheets or in any manner falsely raised the gross profit or markup on these jobs for the purpose of securing an increase in his commission. He stated that in the course of the preparation of the estimate many changes were made in the work sheets and that all changes shown thereon were made prior to the submission of the estimates to the Wilson Line.

There is unquestionably a conflict in the testimony as to the correctness of the work sheets. Apparently this is conceded by defendant. But defendant argues that the testimony offered by plaintiff is in direct conflict with the written evidence and that therefore this Court should not put on "legal blinders" and thus "fail to rectify the wrong resulting from the jury's refusal to accept the facts as they appear upon the record".

Defendant's argument is not entirely clear to us. As we understand it, defendant is asking this Court to say that while there is a conflict in the evidence, the force of the written evidence is so strong that reasonable men would not differ as to the truth thereof.

It is a correct principle of law that where the facts are such that reasonable minds can draw but one conclusion, it is the duty of the Court to decide the question and not to require the jury to deliberate upon evidence from which they can draw but one possible conclusion. *Hofrichter v. Kiewit-Condon-Cunningham*, 147 *Neb.* 224, 22 *N. W.* 2d 703, 164 *A. L. R.* 1256. But this is not true here. In the present case we think that the testimony offered by plaintiff in denial of defendant's accusations was sufficient to warrant the trial judge in submitting this question to the jury. The jury is ordinarily the exclusive judge of the weight and value of the evidence. This is true even in cases where there is no conflict but where the evidence is such that reasonable men might differ as to the conclusions to be drawn therefrom. *Cetofonte v. Camden Coke Co.*, 78 *N. J. L.* 662,

75 *A.* 913, 27 *L. R. A., N. S.,* 1058; *Horicon v. Langlois' Estate,* 115 *Vt.* 470, 66 *A.* 2d 16, 9 *A. L. R.* 2d 195.

We think that there are two possible inferences which may be drawn from the evidence in this case: first, the inference based upon the evidence offered by defendant, and, secondly, the inference based upon plaintiff's testimony. If the first inference is correct, plaintiff would be entitled to a commission of no more than 5%. If the second is accepted, he would be entitled to a commission of 10%. It was for the jury to determine, under the facts presented, which inference should be accepted.

■ The finding of the jury by its verdict that plaintiff secured oral contracts for all seven boats is amply supported by the evidence of plaintiff and of the superintendent of the Wilson Line. Defendant relies upon the understanding that the contracts had to be approved in New York. That is beside the point. Contracts for all seven boats were received by defendant as a result of plaintiff's efforts, based upon which defendant performed the work and for which it was paid by the Wilson Line.

■ There is no merit to defendant's contention that plaintiff by leaving the job waived his right to any future commissions. Plaintiff, according to his testimony, had earned his commission prior to leaving defendant's employ. Moreover, he was fired because he refused to accept a commission less than that to which he was entitled.

### Failure to instruct the jury as requested.

The evidence respecting the alleged changing of the work sheets was developed by defendant on the cross-examination of the plaintiff. Plaintiff's counsel objected on the ground that the plaintiff had not pleaded fraud as an affirmative defense under Superior Court Rule 8(c), *Del. C. Ann.,* providing that when fraud is alleged as an affirmative defense or avoidance, it must be pleaded. The testimony was admitted as tending to show a defense to the amount of plaintiff's commission.

At the conclusion of the trial defendant submitted proposed instructions with respect to the inferences that the jury might draw from the documentary evidence; and other proposed instructions which, in addition to reiterating the first proposed instructions, additionally asked for a charge on the principles of the law of fraud.

The instructions were refused. Defendant here argues that the case was actually tried on the issue of fraud and instructions should have been given, citing *Freeman v. Topkis,* 1 *Marv.* 174, 40 *A.* 948.

Both plaintiff's objection below and defendant's argument here are based on a misconception of the legal effect of the evidence offered. It was admitted, as the trial judge correctly ruled, for the purpose of showing a defense to plaintiff's claim to commissions of ten per cent. It did not constitute an affirmative defense to the contract and in our opinion Rule 8(c) is inapplicable. The misconception arises out of a confusion between fraud that vitiates a contract and a "fraud" in fabricating evidence. Of course, false testimony may in the loose sense be termed a "fraud"; but it is not in itself a defense to an action and merely presents an issue of credibility of testimony that the jury must determine. The trial judge properly stated to the jury the defendant's contention on this point and gave the usual charge on the issue of credibility.

A charge on the law of fraud and deceit, such as is found in *Freeman v. Topkis, supra,* would have been inappropriate and misleading.

As for that part of the requested instructions which deals with inferences to be drawn from the work sheets, it was clearly objectionable as invading the province of the jury. Defendant's requested instructions were based solely on the work sheets and ignored the fact that the jury was required to consider *all* the testimony, oral as well as documentary, in determining whether plaintiff's claim was justified.

There was no error in refusing the requested instructions.

(3) Did the trial judge err in refusing to disclose to counsel the contents of a note received from the jury *before* he delivered a supplemental charge to the jury?

(4) Was there error in the supplemental charge?

While the jury was deliberating, it sent a note to the trial judge, which read as follows:

"While the jury has agreed unanimously on the fact that commissions are due to plaintiff on all seven boats, we are unable to break a 11 to 1 conflict in favor of a 10% commission."

The note was received by the trial judge in chambers in the presence of counsel for the parties. However, after reading it, the trial judge did not state its contents to counsel but again called the jury before him in open court and in the presence of the parties and their counsel gave the jury the following supplementary charge:

"Ladies and gentlemen, I have your note. I don't know that there is much I can say other than, of course, it is to everybody's interest—if possible, without doing injustice to the conscience of anyone—to agree rather than to have to try cases over again.

"But as long as I am Judge I would not want any member or members of any jury panel ever to consider returning a verdict in a legal matter that was contrary to their conscience. I would want them to weigh the problem from all angles, to consider all phases, and then, if an agreement could not be reached, it would necessarily have to result in a disagreement.

"As a Judge, I couldn't say other than what I have just said. But we do like to see verdicts if it is possible, as I say, without harm to the conscience of a juror, no matter who the juror or jurors might be. However, if it is an absolute impossibility, that must be the answer.

"I am going to ask you if you will return to your room for ten minutes, and, if you are unable to agree, you may return then at any time you like."

Following the remarks of the trial judge to the jury, the trial judge, at the request of counsel for defendant, permitted counsel to examine the note. Counsel for defendant then objected to the instructions given by the trial judge to the jury but made no specific objection to the failure of the trial judge prior to his supplementary remarks to divulge to counsel the contents of the note. After the lapse of the stated ten minutes, the trial judge again returned to the courtroom and instructed the bailiff to bring in the jury. The bailiff reported to the trial judge that the jury requested additional time. Approximately one hour thereafter the jury brought in a verdict in favor of plaintiff and against the defendant for the full amount of plaintiff's claim.

There are many reported decisions dealing with the subject of communications between the judge and the jury after the jury has retired. It is settled that the court may not communicate with the jury in the absence of counsel. *Hrovat v. Cleveland R. Co.*, 125 *Ohio St.* 67, 180 *N. E.* 549, 84 *A. L. R.* 215; *Luft v. Kaplan*, 123 *Misc.* 156, 204 *N. Y. S.* 802; *Chicago & A. R. Co. v. Robbins*, 159 *Ill.* 598, 43 *N. E.* 332; *Lewis v. Lewis*, 220 *Mass*, 364, 107 *N. E.* 970, L. R. A. 1915D, 719; *Sommer v. Huber*, 183 *Pa.* 162, 38 *A.* 595. The rule is sometimes stated so broadly in annotations to decided cases as to indicate that any communication from the jury to the court having any bearing on the facts or law of the case must at once be disclosed to counsel. See cases cited in Annotation to 41 *A. L. R.* 2d 306. But we do not find it necessary here to consider whether or not such assertions are too broad and too sweeping. The note in this case was a gratuitous statement about the division of the jury. Assuming that counsel was entitled to know this, how was the defendant harmed by the procedure which was actually followed? Counsel for defendant, although he objected to the language

of the supplementary charge, made no objection to the failure of the trial judge to show counsel the note prior to the charge. Even if he had made such an objection, we cannot see how the court could have given any instructions other than those which it actually gave. Under these circumstances, we do not think that defendant was prejudiced by the failure of the court to disclose at once the contents of the note.

Defendant objects to the supplementary charge to the jury. Defendant has no complaint concerning the language of the charge. In fact, similar charges have been approved, both in the Federal and State courts, since the decision of the Supreme Court of the United States in the case of *Allen v. United States,* 164 *U. S.* 492, 17 *S. Ct.* 154, 501, 41 *L. Ed.* 528. See Annotation in 85 *A. L. R.* 1420. Defendant's objection goes to the giving of the charge in the light of the information—inadvertently received by the trial judge—which the trial judge had before him at the time the charge was given. Defendant contends that the jury's knowledge that the trial judge was informed of the standing of the jury was sufficient to make the trial judge's remarks coercive in nature.

It is not at all unusual for a trial judge to recall a jury after they have been in deliberation for the purpose of ascertaining what difficulties they have and to endeavor to assist them in reaching a proper solution of these difficulties. *Allis v. United States,* 155 *U. S.* 117, 15 *S. Ct.* 36, 39 *L. Ed.* 91; *Suslak v. United States,* 9 *Cir.,* 213 *F.* 913. The majority rule is that the trial judge may call to their attention the difficulties which may be caused by a disagreement, such as the expense of a re-trial, the length of time the case has been pending, the importance of reaching a decision, the number of times the case has already been tried and other facts of a similar nature. *Suslak v. United States, supra; Shea v. United States,* 9 *Cir.,* 260 *F.* 807; *Israel v. United States,* 6 *Cir.,* 3 *F.* 2d 743; *State v. Tucker,* 232 *Mo.* 1, 133 *S. W.* 27; *Commonwealth v. Tenbroeck,* 265 *Pa.* 251, 108 *A.* 635; *Odette v. State,* 90 *Wis.* 258, 62 *N. W.* 1054; *People v. Faber,* 199 *N. Y.* 256, 92 *N. E.* 674; *Liska v. State,* 115 *Ohio St.*

283, 152 *N. E.* 667. Necessarily each charge must be examined to determine whether or not the total effect thereof is to coerce or influence unduly the jury in reaching its decision.

As we read the remarks of the trial judge, there is nothing therein, of itself, to which exception may properly be taken. He emphatically instructed the jury that no member thereof should agree to a verdict which would be contrary to the dictates of his own conscience. He requested the jury to consider the advisability of endeavoring to reach a verdict. The thrust of defendant's objection is the giving of this charge when the trial judge knew—and the jury knew he knew—that the jury stood 11 to 1 in favor of plaintiff.

. Under the ancient common law jurors were kept together as prisoners of the court, "without meat, drink, fire, or candle, unless by permission of the judge, till they are * * * agreed" upon a verdict. See *People v. Sheldon,* 156 *N. Y.* 268, 50 *N. E.* 840, 842, 41 *L. R. A.* 644. Since that time the law has developed to a point where, if the trial judge should inquire as to the standing of the jury, that alone might constitute reversible error. Such action on the part of the court was first strongly condemned, although reversed on another ground, in the case of *Burton v. United States,* 196 *U. S.* 283, 25 *S. Ct.* 243, 250, 49 *L. Ed.* 482, in which the Supreme Court of the United States said: "* * * we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge". In the case of *Brasfield v. United States,* 272 *U. S.* 448, 47 *S. Ct.* 135, 71 *L. Ed.* 345, the Supreme Court said:

"We deem it essential to the fair and impartial conduct of the trial that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and

may vary widely in different situations, but in general its tendency is coercive. It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned."

The rule of law laid down in the *Brasfield* and *Burton* cases, and other cases following these decisions, is in every instance, as far as we have been able to determine, predicated upon the fact that the trial judge *inquired* of the jury as to their standing. This inquiry on the part of the trial judge at the time of the giving of the supplementary charge has in every instance been strongly condemned, and properly so. Such an inquiry is an invasion of the privacy of the deliberations of the jury, with which the court should have no concern.

We do not think that the decision in the *Brasfield* case and other cases predicated thereon should be extended to cover a situation where, as here, the information received by the trial judge was contained in a note sent by the jury to the trial judge and not as a result of an inquiry on his part as to the standing of the jury. We think that this is particularly true in this case, where the trial judge was so careful to instruct the jury that no member thereof should agree to a verdict contrary to the dictates of his or her conscience and where there is nothing in the language of the supplementary charge which would indicate that the trial judge in any way attempted to put any pressure or coercion on the jury, or any member thereof. The only cases of which the court has knowledge in which this information was obtained by the court without inquiry on the part of the court are the cases of *Bowen v. United States*, 8 *Cir.*, 153 *F.* 2d 747, and *Maloney v. Collison, D. C.*, 119 *F. Supp.* 12. In the *Bowen* case the court held that the note of the foreman was meaningless because of the number of defandants and the number of indictments and therefore could not reasonably be

taken to mean that the jurors were divided 11 to 1 on every issue submitted. Similarly, in the *Maloney* case, where the division of the jury was given by agreement of counsel, the extent of the jury's division, as thereafter disclosed, was received by the court as referring only to one of the several questions submitted. Here the information received was volunteered by the jury. The language of the trial judge's supplementary charge relative to the jury reaching a verdict "we do like to see verdicts, if possible" was so harmless as to be completely unobjectionable. Even with the knowledge as to how the jury stood we do not see how the jury could have possibly been coerced by this charge.

The judgment will be affirmed.