**Arnold N. BRITT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted April 9, 1979.

Decided May 8, 1979.

Richard E. Fairbanks, Jr., Asst. Public Defender, Wilmington, for defendant below, appellant.

Timothy H. Barron, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice:

Defendant was convicted by a Superior Court jury of robbery in the second degree (a lesser included offense), 11 *Del.C.* § 831, escape after conviction, 11 *Del.C.* § 1253, and resisting arrest, 11 *Del.C.* § 1257. Defendant was thereafter sentenced to a term of three years imprisonment for robbery, 60 days imprisonment for resisting arrest and 30 days imprisonment for escape after conviction, with the sentences to run consecutively. Defendant was found not guilty as to a further charge of reckless endangering.

Defendant appeals from the conviction and sentences on the following grounds: (a) prosecutorial reference to other unrelated incidents or "crimes" was so improper as to deny defendant a fair trial, and admission

of the evidence, notwithstanding defense's failure to object, constituted plain error; and (b) the Trial Judge's giving of two separate supplemental charges to the jury after it was "deadlocked" had the effect of coercing the jury into rendering a verdict.

The alleged robbery and other offenses occurred at the premises of a friend of defendant when a plainclothes police officer, while attempting to arrest defendant, was disarmed by defendant, who then fled with the officer's pistol. The evidence was conflicting as to whether defendant was himself armed and whether his purpose in being on the premises at the time was peaceful.

The other incidents or "crimes" referred to relate to (1) a "fight" defendant had with his friend at the premises twelve hours earlier; and (2) threats made by defendant to use the gun on his friend and another in the course of a telephone conversation with her seven hours later.

I

■ Defendant's defense to the charges was that he was peacefully on his friend's premises at the time of the alleged offenses; that he was unarmed; that he had no motive other than self-defense and personal fear of the arresting officer for resisting arrest, disarming the officer and fleeing with his pistol; and that he intended to return the pistol and turn himself in.

The State in its case-in-chief did not put before the jury either of the above episodes. Defendant did so in testifying on his own behalf at length as to events in time both well before and well after the offenses for which he was being tried.

Defendant put the prior episode before the jury by stating that while he had had a "fight" with his friend twelve hours earlier, his purpose in returning to the premises was merely to pick up his clothes and for "no trouble". Defendant put his motive for resisting arrest and armed flight in issue by testifying that he seized the officer's gun in self-defense; that he fled solely because of his fear for the arresting officer (whom he knew); and that he *never had any intentions of doing anything with a gun*.

On direct examination, defendant also referred to having later telephoned his friend. He did so for the apparent purpose of supporting his denial of having been previously armed; or of intending to resist arrest or to steal the officer's gun.

The State was then properly entitled to cross-examine defendant concerning both the earlier "fight" and the subsequent telephone call, both for purposes of impeachment and his defense of lack of motive or evil intent for resisting arrest, robbery and escape; and that he had been at the premises with a peaceful intent and unarmed.

The State's cross-examination of defendant as to his later telephone call to his friend, as to whether he was "angry" with her and whether he had been armed at the time of the incident was proper, both for purposes of impeachment and to take issue with his defense-explanation for resisting arrest, taking of the officer's gun and escape.

Further, it was proper for the State to introduce rebuttal testimony [1] (by a detective who overheard the telephone conversation) as to defendant's ultimate intention as to the gun, that is whether he intended to surrender it and himself, as he contended, or to use it on his friend and another, as the witness testified defendant said.

Assuming the "fight" and telephone threat rise to the level of other "crimes", the testimony was invited and admissible either as to the issue of defendant's intent at the time of the alleged offenses and otherwise for purposes of impeachment of defendant. See *Benson v. State,* Del.Supr., 395 A.2d 361 (1978); *Johnson v. State,* Del. Supr., 311 A.2d 873 (1973). Thus, the Trial Judge's rulings were not error and, it follows, neither were they plain error. See *Ward v. State,* Del.Supr., 366 A.2d 1194 (1976).

---

1. The Trial Judge permitted the testimony after defense withdrew its initial objection to it.

## II

Defendant claims the Court committed error in giving, in effect, two supplemental *"Allen"* or *"dynamite charges"* after the jury had twice reported deadlock. However, the record discloses that the first supplemental charge was not an *"Allen"* charge as such. When the jury first returned to report it was "hung", the Court through inquiry determined that the jury was in agreement as to one count and disagreement as to two counts, as to which the third was interrelated. When the Trial Judge expressed concern as to the length and involvement of its charge and the jury indicated that it would be helpful if the Court would recharge the jury as to several of the counts, the Court proceeded to do so by its first supplemental charge. After concluding it and as an after-thought, the Trial Judge then added several sentences which are set forth below.[2] The latter represented approximately 1/16th of the total first supplemental charge. The jury then resumed deliberation.

When the jury returned a note to the Court within less than a minute to report that they could not reach a decision, the Court then decided to read to the jury the full *"Allen"* charge, which it did, over defendant's objection.

Defendant does not object to the substance of either of the charges but rather contends that the mere giving of the second charge amounted to the giving of two *"Allen"* charges and had a coercive effect upon the jury. The jury's verdict was rendered within approximately one and one half hours of its first reported deadlock.

We note that the full *"Allen"* charge included the admonition referred to in *Brown v. State,* Del.Supr., 369 A.2d 682 (1976). While the giving of multiple *"Al-*

*len"* charges is to be avoided and may constitute reversible error, we find that under the facts before us it was not error. The Court gave but one *"Allen"* charge in the accepted meaning of the term. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *Hyman Reiver and Company v. Rose,* Del.Supr., 147 A.2d 500 (1958).

AFFIRMED.

---

**2.** "THE COURT: There are two other things I want to mention to you before you go back into your deliberations.

One, in urging that you arrive at a unanimous verdict, if you can, I want to remind each of you you are not expected to give up your own conscientous [sic] convictions or decisions in this case in order to arrive at a unanimous verdict. The Court, in asking you to see if you can arrive at a unanimous verdict, is urging you to see if you can agree upon a verdict. It is not urging that somebody give up their views if they continue to hold their views. Each of you must, of course, go towards your own conscience in the case and no one is being asked to give up the conclusions they have conscientously [sic] arrived at after considering the evidence."