Henry J. ANDERSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 354, 1996.

Supreme Court of Delaware.

Submitted: May 6, 1997.
Decided: June 23, 1997.

Todd E. Conner, Assistant Public Defender, Wilmington, for appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for appellee.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

Following a jury trial in the Superior Court, the defendant-appellant, Henry J. Anderson ("Anderson"), was convicted of Attempted Robbery in the First Degree. Anderson was sentenced to life imprisonment after being declared a habitual offender. This is Anderson's direct appeal.

Anderson contends that the Superior Court committed reversible error when it responded to a note from a juror during the jury's deliberations. Specifically, Anderson argues that he was denied his right to the assistance of counsel and his right to be present at a fundamental stage of his trial.

The record reflects that the manner of the trial judge's communication with the deliber-ating jury was improper. The record does not reflect that the erroneous communication was harmless. Accordingly, the judgment of the Superior Court is reversed.

### Substantive Facts

On January 7, 1995, at approximately 5:00 a.m., a deliveryman parked his van on the corner of Seventh and Washington Streets in Wilmington. As he was preparing for his next delivery, someone jumped in the van behind the deliveryman and reached into his right-hand vest pocket. The deliveryman elbowed the assailant. The assailant hit the deliveryman in the face, knocking off his glasses and causing them to fall to the floor.

A struggle ensued and continued on the ground outside of the vehicle. The assailant told the victim he was a "dead white man." While the deliveryman was being kicked, he saw a glove and a screwdriver fall to the ground. The deliveryman was able to get back into his van and lock the assailant outside.

The deliveryman immediately drove to a local gas station, where he telephoned the police. Officer Kenneth Hairston ("Hairston"), and another officer from the Wilmington Police Department went to the gas station promptly. They obtained a description of the assailant from the deliveryman.

Hairston testified that, within minutes of the attempted robbery report, he was at Seventh and Washington Streets searching for a black male with gloves and a screwdriver. There was little pedestrian traffic at that early morning hour. Hairston observed a suspect at Sixth and Washington Streets shortly after his search began.

Hairston stopped the suspect, who was later identified as Anderson. When Hairston began a pat down search, Anderson threw two gloves on the ground. Hairston found a screwdriver in Anderson's back pocket and noticed what appeared to be dry blood on Anderson's boots.[1]

---

1. Anderson raised an issue about evidence gathering and preservation that is not decided in this appeal. That issue can be relitigated at Anderson's new trial without prejudice. The Superior Court's prior ruling should not be deemed to be the law of the case. *Wilmington Trust Co. v. Aetna Cas. & Surety Co.*, Del.Supr., 690 A.2d 914, 917 (1996); *see Bailey v. State,* Del.Supr., 521 A.2d 1069 (1987).

At trial, the deliveryman testified that his assailant was a black male, approximately 5 feet 10 inches tall, and wore a down jacket. Because his glasses were knocked off, the deliveryman did not clearly see the face of his assailant. Consequently, he could not positively identify Anderson as his attacker.

At trial, the deliveryman was shown a screwdriver and gloves. He testified that the screwdriver looked like the one that had fallen on the ground when he was attacked. He also testified that the gloves looked like the one that had fallen from his assailant's pocket.

### Jury Deliberations Question and Answer

During the jury's deliberations, the Superior Court received a handwritten note from one of the jurors along with a key which that juror had found inside one of the gloves that had been admitted into evidence. The note stated: "Your Honor, I found the attached key in the right glove. Any significance? Who does it belong to?" The note was written by Juror Number Eight, who was not the jury foreperson. The Superior Court, without first notifying counsel, responded in writing: "No significance. Please ignore. I have no idea to whom it belongs. The key will be kept by the Court." Subsequently, another key was found in one of the gloves by a juror and given to the bailiff. No instruction was given to anyone about the second key.

Approximately one hour after the trial judge had responded to the juror's question, the trial judge met with counsel in chambers and off the record. Apparently, the trial judge informed counsel of the prior note and his response. At the time, neither counsel objected. Ten minutes later, however, Anderson's counsel, on the record and in open court, objected to the Superior Court's response, stating:

Your Honor, I have a remark or an objection to the response by the Court with regard to the note.

Just before Your Honor took the Bench, I did have an opportunity to inspect the keys. They appeared to be—One appears to be a General Motors ignition key, and the other, a copy of a key.

The objection is based on the Court's response. And the [d]efense submits that it is—The response the [Superior] Court gave was a direct comment on the evidence. "No significance. Please ignore. I have no idea to whom it belongs. The key will be kept by the Court." And the [d]efense asserts that that is a comment on the evidence.

Thereafter, the following exchange took place:

The Court: Which part of it?

Defense Counsel: All parts of it, Your Honor.

The Court: You didn't give me any objection of that nature shortly after—

Defense Counsel: We weren't on the record.

The Court: You didn't give me any objection off the record. I would have called the court reporter. Tell me how, otherwise, I would have handled this note.

Defense Counsel: Your Honor—

The Court: I resent your raising the objection now. I feel like I've been sandbagged.

Defense Counsel: Your Honor, that was just ten minutes ago, upstairs, and we weren't on the record.

The Court: We would have gone on the record if you had indicated an objection to the way I answered the note. Tell me how I should have answered the note.

Defense Counsel: Your Honor, the objection is it was a comment on the evidence. The glove was in evidence.

The Court: The key wasn't.

Defense Counsel: Your Honor, the key was in the glove, which was in evidence. And that's the [d]efense's position at this point in time.

The Court: The key was not—All right. Your position is noted, as is mine.

Following this exchange, the jury was called into the courtroom to announce its verdict. Anderson was found guilty, as charged, of Attempted Robbery in the First Degree.

### Deliberating Jury Communications with Court

In this appeal, Anderson challenges a communication between the trial judge and the jury after its deliberations had begun. *See Desmond v. State*, Del.Supr., 654 A.2d 821, 826–27 (1994); *Van Arsdall v. State*, Del.Supr., 486 A.2d 1, 10 (1984), *vacated on other grounds, Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *McCloskey v. State*, Del.Supr., 457 A.2d 332, 337–39 & n. 8 (1983); *Jacobs v. State*, Del.Supr., 418 A.2d 988, 988–89 (1980).[2] Any communication from the trial judge to a deliberating jury in a criminal proceeding implicates the defendant's right to the assistance of counsel with regard to a jury's note. *See Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975); *see also Bryan v. State*, Del.Supr., 571 A.2d 170 (1990). Such communications also implicate the defendant's right to be present when the jury is instructed and right to be tried by an entire panel of properly instructed jurors. *See Claudio v. State*, Del.Supr., 585 A.2d 1278 (1991); *Probst v. State*, Del.Supr., 547 A.2d 114 (1988); *Jacobs v. State*, Del.Supr., 418 A.2d at 988; *see also Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)[3]; Super.Ct.Crim.R. 43.[4]

The general procedures that should be followed when a deliberating jury has a question for the trial judge are well established:

(1) Before the jury retires to deliberate, it should be instructed by the trial judge to communicate any questions, regarding matters not personal to a particular juror, in writing through the foreperson. *Desmond v. State*, 654 A.2d at 826; *McCloskey v. State*, 457 A.2d at 338–39 n. 8; HANDBOOK FOR JURORS SERVING IN THE SUPERIOR COURT OF THE STATE OF DELAWARE 9 (1994); *see Jacobs v. State*, 418 A.2d at 988; *Smith v. State*, Del.Supr., 317 A.2d 20, 24 (1974). Notes of a personal nature need not be sent through the foreperson, e.g. a family emergency.

(2) The jury should be informed that any notes are to be given to the bailiff for delivery to the trial judge. HANDBOOK FOR JURORS SERVING IN THE SUPERIOR COURT OF THE STATE OF DELAWARE 9 (1994) ("Jurors should put any question or request during deliberations in writing for delivery by the bailiff to the judge."); *see Desmond v. State*, 654 A.2d at 826.

(3) When the trial judge receives a note from the jury, the judge should notify counsel immediately. *See McCloskey v. State*, 457 A.2d at 334; *Jacobs v. State*, 418 A.2d at 988; *Harrigan v. State*, Del.Supr., No. 188, 1996, 1997 WL 45084, at *3, Walsh, J., (Jan. 29, 1997) (ORDER); *Slater v. State*, Del. Supr., No. 166, 1991, 1992 WL 115952, at *6, Holland, J., (Apr. 8, 1992) (ORDER); *Hyman Reiver & Co. v. Rose*, Del.Supr., 147 A.2d 500, 505 (1958); *see also Shields v. United States*, 273 U.S. 583, 588, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927).

---

**2.** *See also Watson v. State*, Del.Supr., No. 405, 1996, 1997 WL 188341, at *1, Hartnett, J., (Apr. 2, 1997) (ORDER); *Harrigan v. State*, Del.Supr., No. 188, 1996, 1997 WL 45084, at *3, Walsh, J., (Jan. 29, 1997) (ORDER); *Slater v. State*, Del. Supr., No. 166, 1991, 1992 WL 115952, at *6, Holland, J., (Apr. 8, 1992) (ORDER); *see also Loatman v. Patillo*, Del.Supr., 401 A.2d 91, 92 (1979); *Hyman Reiver & Co. v. Rose*, Del.Supr., 147 A.2d 500, 505 (1958).

**3.** In *Rogers v. United States*, the United States Supreme Court reversed the defendant's conviction, based in part upon the Court's interpretation of Rule 43 of the Federal Rules of Criminal Procedure. *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). The Court found that the trial court committed reversible error by responding to a question from the jury without first notifying counsel. *Id.* at 41, 95 S.Ct. at 2095. The Court relied on Rule 43 of the Federal Rules of Criminal Procedure in finding that "the jury's message should have been answered in open·court and that [defendant's] counsel should have been given an opportunity to be heard before the trial judge responded." *Id.* at 39, 95 S.Ct. at 2095.

**4.** Superior Court Criminal Rule 43, which was modeled after Rule 43 of the Federal Rules of Criminal Procedure, provides that "[t]he defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict." Super.Ct.Crim.R. 43; *see Shaw v. State*, Del.Supr., 282 A.2d 608, 609 (1971).

(4) The note from the jury should be marked as a court exhibit and made part of the record. *United States v. Ronder*, 2d Cir., 639 F.2d 931, 934 (1981); *see Rogers v. United States*, 422 U.S. at 41, 95 S.Ct. at 2095; *McCloskey v. State*, 457 A.2d at 339 n. 8.

(5) The colloquy between counsel and the trial judge with regard to answering the note should be on the record. Super.Ct.Crim.R. 26.1 ("All sidebar conferences and chambers conferences during trial shall be recorded unless the trial judge determines, in advance, that neither evidentiary nor substantive issues are involved."); *see Loatman v. Patillo*, Del.Supr., 401 A.2d 91, 92 (1979); *see also United States v. Neff*, 7th Cir., 10 F.3d 1321, 1327 (1993); *United States v. Ronder*, 639 F.2d at 934.

(6) The trial judge should inform counsel of the court's proposed response on the record and provide counsel with the opportunity to object or otherwise be heard. *Rogers v. United States*, 422 U.S. at 39, 95 S.Ct. at 2094–95; *Harrigan v. State*, 1997 WL 45084, at *3; *see Shields v. United States*, 273 U.S. at 588, 47 S.Ct. at 479.

(7) The trial judge's response to the jury's note should be delivered in open court, on the record, with all jurors, the defendant, and counsel present. *Rogers v. United States*, 422 U.S. at 39, 95 S.Ct. at 2094–95; *Harrigan v. State*, 1997 WL 45084, at *3; *McCloskey v. State*, 457 A.2d at 339 n. 8; *see Hyman*

*Reiver & Co. v. Rose*, 147 A.2d at 505; *see also Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987); *Shields v. United States*, 273 U.S. at 588, 47 S.Ct. at 479.

### *Deliberating Jury Improper Judicial Communications Harmless Error Standard*

██ Communications by a trial judge with a deliberating jury without notice to or in the presence of counsel are improper. *Jacobs v. State*, Del.Supr., 418 A.2d 988 (1980); *see Loatman v. Patillo*, Del.Supr., 401 A.2d 91, 92 (1979); *Hyman Reiver & Co. v. Rose*, Del.Supr., 147 A.2d 500, 505 (1958). Such communications do not constitute reversible error *per se*. Those contacts must, however, be subjected to a harmless error analysis. *Jacobs v. State*, 418 A.2d at 989.

In determining whether the trial judge's improper communication to the deliberating jury without notice to or in the presence of counsel constitutes harmless error, the dispositive factor is often whether the communication was ministerial or substantive in nature. If the improper communication is only ministerial, it may be a harmless error. *Compare Jacobs v. State*, Del.Supr., 418 A.2d 988 (1980) [5] *with Loatman v. Patillo*, Del. Supr., 401 A.2d 91 (1979). If the improper communication between the trial judge and the deliberating jury is of a substantive nature, however, it is more likely that an appellate court will conclude that the error requires a new trial. *See Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975) [6]; *United States v. Neff*, 7th Cir., 10 F.3d 1321 (1993).

**5.** For example, in *Jacobs v. State*, the jury foreman wrote a note to the trial judge asking the proper procedure for announcing the verdict, to which the trial judge responded in writing without consulting counsel. *Jacobs v. State*, 418 A.2d at 988. The trial judge responded that the charges would be read separately and the foreman would respond with the jury's determination as to each. *Id.* This Court noted in *Jacobs* that the communication was summarized in the record as being a request for instructions as to the procedure to follow for delivering the jury verdict; that such procedure was not set forth in the jurors' handbook; and that defense counsel was given the opportunity to develop a record regarding this matter and declined to do so. *Id.*

at 989. This Court stated that the trial judge's response was "ministerial in nature" and concluded that "the error was harmless beyond a reasonable doubt." *Id.* at 988–89.

**6.** In *Rogers v. United States*, the Supreme Court found that it was reversible error for the trial judge to respond to the jury's question asking whether the court would accept the verdict of "Guilty as charged with extreme mercy of the Court." *Rogers v. United States*, 422 U.S. at 36, 95 S.Ct. at 2093. The Court concluded that the trial judge's response, without first notifying counsel, violated the defendant's right to be present at trial as provided in Rule 43 of the Federal

### This Communication Constitutes Reversible Error

This Court must determine whether the Superior Court's improper communication with the deliberating jury was a harmless error. In the case *sub judice,* the juror's note was of a substantive nature. It was tantamount to a request for further instructions on the evidence. *See Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975).

 Where the jury's note involves a substantive aspect of the trial, the defendant does not have the burden of proving that actual prejudice resulted from the trial judge's improper communication in order to prevail. *McCloskey v. State,* Del.Supr., 457 A.2d 332, 337 (1983). Rather, a defendant can meet the burden "by showing that prejudice is manifestly 'conceivable,' if not apparent, on the record." *Id.; see Jacobs v. State,* Del.Supr., 418 A.2d 988, 989 (1980). Accordingly, this Court must decide whether actual prejudice is either manifest on the record or conceivable.

The question posed by Juror Number Eight involved an issue of evidence. The handwritten notes were exchanged between the trial judge and only one juror, who was not the foreperson. This Court has previously stated: " '[A]ny occasion which leads to communication with the whole jury panel through one juror inevitably risks innocent misstatements of the law and misinterpretations despite the undisputed good faith of the participants.' " *Desmond v. State,* Del.Supr., 654 A.2d 821, 826–27 (1994) (quoting *United States v. United States Gypsum Co.,* 438 U.S. 422, 461, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1978)).

The record does not reflect whether the trial judge's written response was made known to the entire jury by Juror Number Eight. The record does reflect, however, that a second key was found by an unknown juror. Apparently, no additional instruction was given to any juror with regard to the second key.

 The record in the case *sub judice* precludes this Court from concluding that the communication between Juror Number Eight and the trial judge was harmless beyond a reasonable doubt. *Compare Jacobs v. State,* Del.Supr., 418 A.2d 988 (1980) *with Loatman v. Patillo,* Del.Supr., 401 A.2d 91 (1979). The trial judge responded *ex parte* and without first notifying counsel. Thus, there was no opportunity for counsel to be heard or to object. The trial judge's response constituted a supplemental instruction with regard to a substantive matter, i.e., an item that was in evidence. There is no record that the trial judge's response was communicated to all the jurors. Consequently, Anderson was denied his state and federal constitutional rights: to be assisted by counsel with regard to the juror's note; to be present when the jury was given supplemental instructions on a substantive evidentiary matter; and to be tried by an entire panel of properly instructed impartial jurors. *See Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631; *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094–95, 45 L.Ed.2d 1 (1975); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Claudio v. State,* Del. Supr., 585 A.2d 1278 (1991); *Bryan v. State,* Del.Supr., 571 A.2d 170 (1990); *Probst v. State,* Del.Supr., 547 A.2d 114 (1988); *Jacobs v. State,* Del.Supr., 418 A.2d 988 (1980); *see also* Super.Ct.Crim.R. 43.

### Conclusion

The judgment of the Superior Court is reversed. This matter is remanded for a new trial.

Rules of Criminal Procedure. *Id.* at 39, 95 S.Ct. at 2094–95.