STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOHN
STANLEY CZACHOR, ALSO REFERRED TO AS JOHN S.
CZACHOR, DEFENDANT-APPELLANT.
Argued March 4, 1980—Decided April 2, 1980.

*Robert A. Vort,* Designated Counsel, argued the cause for appellant (*Stanley C. Van Ness,* Public Defender, attorney).

*Frederick S. Cohen,* Deputy Attorney General, argued the cause for respondent (*John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, J.

The issue presented in this appeal is whether it is plain error for a judge in a criminal trial to give repeated supplemental instructions, commonly known as an "*Allen* charge," [1] to jurors who had indicated on three occasions that they were deadlocked and unable to reach a unanimous verdict. Defendant contends that the repeated use of the *Allen* charge, which is intended to persuade the jury to reach a unanimous verdict on defendant's guilt or innocence, was so inherently coercive that it justifies reversal of his conviction under the doctrine of plain error.

We have determined that the so-called *Allen* charge, as commonly applied and as presently formulated, does have unacceptable coercive effects upon jury deliberations and its use can no longer be sanctioned in criminal trials in this State. Further, the repeated use of the modified *Allen* charge in this case did constitute reversible error under the plain error doctrine. We accordingly reverse defendant's convictions and remand the case for a new trial.

I

The important issue in this case emerges from relatively simple facts. In April 1977 defendant John Stanley Czachor was tried before a jury in the Superior Court of Union County on charges of threatening the life of Mrs. Mary Catrone on two occasions and of possession of a pistol without a permit and with intent to use it unlawfully on those occasions. Trial of these charges was completed in one day. The case went to the jury at 11:00 a. m. on the second day. At 2:35 that afternoon the jury

---

[1] *Allen v. United States,* 164 *U.S.* 492, 17 *S.Ct.* 154, 41 *L.Ed.* 528 (1896), discussed *infra* at 395.

reported an impasse and the trial judge delivered a modified *Allen* charge. At 5:15 p. m., the jury again reported its inability to reach a unanimous verdict and the judge sent the jurors home for the evening. The next morning the judge delivered a second *Allen* charge. Three and a half hours later the jury again reported that, despite sincere efforts, it was impossible to reach a unanimous decision. Following a lunch recess the judge delivered still a third *Allen* charge. The jury returned an hour later and, in response to an inquiry from the trial judge, announced unanimous guilty verdicts on four of the six counts. After an instruction pertaining to the remaining counts, the jury deliberated briefly and returned with verdicts on the remaining charges. On appeal, defendant, not having objected at trial to the judge's use of the *Allen* charges, contended that giving the charge for the third time was plain error. The Appellate Division rejected this contention and affirmed the convictions in a brief, unpublished *per curiam* opinion.

We turn first to the question of whether the so-called *Allen* charge as generally used in current practice carries with it an impermissible potential for prejudice.

The United States Supreme Court sanctioned a jury charge of the kind utilized in this case in *Allen v. United States*, 164 *U.S.* 492, 17 *S.Ct.* 154, 41 *L.Ed.* 528 (1896), hence its common designation as the "*Allen* charge." The supplemental instruction which the trial judge gave in that case emphasized to the deadlocked jury that each juror "should examine the question . . . with a proper regard and deference to the opinions of each other . . . [and] that they should listen, with a disposition to be convinced, to each other's arguments." 164 *U.S.* at 501, 17 *S.Ct.* at 157, 41 *L.Ed.* at 531. It further importuned the jury that "if much the larger number were for conviction [or for acquittal], a dissenting juror should consider whether his doubt was a reasonable one . . . [and] whether [the juror] might not reasonably doubt the correctness of a judgment which was not con-

curred in by the majority." *Ibid.* The Supreme Court found no error in this supplemental instruction, stating that

[i]t certainly cannot be the law that each juror should not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. [*Ibid.*]

In *State v. Williams*, 39 *N.J.* 471 (1963), *cert.* den. 374 *U.S.* 855, 83 *S.Ct.* 1924, 10 *L.Ed.*2d 1075 (1963), this Court upheld the use of an *Allen* charge in a criminal case. The trial court's supplemental charge emphasized the time, expense, and effort that had gone into the trial and instructed the jury that if they failed to return a verdict "the case will have to be retried." *Id.* at 481. On appeal, defendant contended that the repeated emphasis on discussion and adjustment of views necessarily caused one or more of the jurors to abandon firm convictions and further, that the court's urging of agreement encouraged jurors to compromise their views in an effort to reach a common conclusion. The Court rejected these contentions because it believed that the coercive aspects of the charge were adequately balanced by other instructions designed to preserve juror independence. It stated that

[a] judge may urge upon the jury the importance of reaching an agreement, as long as he instructs them that such agreement is not to be had at the sacrifice of the conscientious convictions of individual jurors.... We see nothing in the supplemental charges which would in any way interfere with the independent thinking of the members of the jury. The essence of the instructions was nothing more than an earnest request to the jurors that they should consider each other's view and attempt to reconcile their differences in an effort to agree upon a verdict if they could conscientiously do so. [*Id.* at 484 (citations omitted).]

In *State v. DiModica*, 40 *N.J.* 404 (1963), the Court upheld a conviction following a supplemental instruction to jurors that "it was the duty of the jury to arrive at a verdict if that were

possible, and that individual jurors were not to cling stubbornly to the positions they first took without giving due regard to the views of their colleagues." *Id.* at 414. The *Allen* charge, which had been involved in the *Williams* case, was generally endorsed in *State v. Hutchins,* 43 *N.J.* 85, 96 (1964). Accord, *State v. Wright,* 113 *N.J.Super.* 79, 83–84 (App.Div.1971), rev'd on other grounds 61 *N.J.* 146 (1972) (so-called "*Allen* charge," delivered on court's own initiative after approximately four hours of deliberations, fully comported with the mandate in *Williams*; no error); *State v. Boiardo,* 111 *N.J.Super.* 219, 239–240 (App. Div.1970), certif. den. 57 *N.J.* 130 (1970), *cert.* den. 401 *U.S.* 948, 91 *S.Ct.* 931, 28 *L.Ed.2d* 231 (1970); *cf. State v. Hodge,* 162 *N.J.Super.* 43, 45–47 (App.Div.1978) (trial court did not err by including a modified *Allen* charge in its initial jury instruction).

The *Allen* charge has come under severe criticism from commentators and has been disapproved by a growing number of jurisdictions.[2] Fault with the charge rests primarily on the

---

[2]The increasing number of courts which have disapproved *Allen* instructions in whole or in part, includes both federal *e. g., United States v. Thomas,* 449 *F.2d* 1177 (D.C.Cir.1971); *United States v. Fioravanti,* 412 *F.2d* 407 (3 Cir. 1969), *cert.* den. *sub nom. Panaccione v. United States,* 396 *U.S.* 837, 90 *S.Ct.* 97, 24 *L.Ed.2d* 88 (1969); *United States v. Brown,* 411 *F.2d* 930 (7 Cir. 1969), *cert.* den. 396 *U.S.* 1017, 90 *S.Ct.* 578, 24 *L.Ed.2d* 508 (1970), and state courts, *e. g., Fields v. State,* 487 *P.2d* 831 (Alaska Sup.Ct.1971); *State v. Thomas,* 86 *Ariz.* 1611, 342 *P.2d* 197 (Sup.Ct.1959); *People v. Gainer,* 19 *Cal.3d* 835, 566 *P.2d* 997, 139 *Cal.Rptr.* 861 (Sup.Ct.1977); *Taylor v. People,* 176 *Colo.* 316, 490 *P.2d* 292 (Sup.Ct.1971); *State v. Brown,* 94 *Idaho* 352, 487 *P.2d* 946 (Sup.Ct.1971); *People v. Mills,* 131 *Ill.App.2d* 693, 268 *N.E.2d* 571 (App.Ct. 1971); *State v. Nicholson,* 315 *So.2d* 639 (La.Sup.Ct.1975); *State v. White,* 285 *A.2d* 832 (Me.Sup.Jud.Ct.1972); *Burnette v. State,* 280 *Md.* 88, 371 *A.2d* 663 (Ct.App.1977); *People v. Sullivan,* 392 *Mich.* 324, 220 *N.W.2d* 441 (Sup. Ct.1974); *State v. Martin,* 297 *Minn.* 359, 211 *N.W.2d* 765 (Sup.Ct.1973); *State v. Randall,* 137 *Mont.* 534, 353 *P.2d* 1054 (Sup.Ct.1960); *State v. Garza,* 185 *Neb.* 445, 176 *N.W.2d* 664 (Sup.Ct.1970); *Azbill v. State,* 88 *Nev.* 240, 495

grounds that it is potentially coercive and inaccurate, that appellate courts are ill-equipped to detect the existence or gauge the extent of jury coercion or confusion, and that the interest in avoiding the expense of mistrial is outweighed by the substantial risk that the right to a fair trial at the hands of an impartial jury is jeopardized by its use.

It is fair to say that the typical *Allen* charge does not simply remind jurors of their duty to cooperate in collective deliberations. It has a rather different thrust. The charge is intended to undo a jury deadlock. It tends therefore to focus upon possibly the weakest links in the chain locking the jury in disagreement, namely, the minority holdouts on the jury. Hence, the charge usually admonishes specifically and pointedly only those in the minority to reconsider their beliefs in light of the adverse position held by the majority. It also exerts pressures upon jurors by casting indirectly upon them a personal responsibility and sense of guilt for the impasse. It does so through various references to such matters as the expense and waste of a mistrial, the need for a retrial, and the cost and inconvenience of a new trial. The charge further intimates that the dissenting jurors may not be acting properly or conscientiously since another similar jury will be called upon in a new trial to perform the identical task and presumably will achieve it, *i.e.*, reach a unanimous verdict on the same evidence. Moreover, dissenting jurors are usually asked to consider these extra-

---

P.2d 1064 (Sup.Ct.1972); *State v. Blake,* 113 *N.H.* 115, 305 *A.2d* 300 (Sup.Ct. 1973); *State v. Minns,* 80 *N.M.* 269, 454 *P.2d* 355 (Ct.App.1969); *State v. Marsh,* 260 *Or.* 416, 490 *P.2d* 491 (Sup.Ct.1971), *cert.* den. *sub nom. O'Dell v. Oregon,* 406 *U.S.* 974, 92 *S.Ct.* 2420, 32 *L.Ed.2d* 674 (1972); *Commonwealth v. Spencer,* 442 *Pa.* 328, 275 *A.2d* 299 (Sup.Ct.1971); *State v. Patriarca,* 112 *R.I.* 14, 308 *A.2d* 300 (Sup.Ct.1973); *Kersey v. State,* 525 *S.W.2d* 139 (Tenn.Sup. Ct.1975); *Kelley v. State,* 51 *Wis.2d* 641, 187 *N.W.2d* 810 (Sup.Ct.1971); *Elmer v. State,* 463 *P.2d* 14 (Wyo.Sup.Ct.1969), *cert.* den. 400 *U.S.* 845, 91 *S.Ct.* 90, 27 *L.Ed.2d* 82 (1970).

neous factors at a time when they are most vulnerable to judicial suasion to compose differences.

An instruction that explicitly directs only the dissenters to doubt the reasonableness of their convictions is inherently one-sided. See *United States v. Fioravanti,* 412 *F.*2d 407, 416–417 (3 Cir. 1969), *cert.* den. *sub nom. Panaccione v. United States,* 396 *U.S.* 837, 90 *S.Ct.* 97, 24 *L.Ed.*2d 88 (1969). By encouraging acquiescence in the majority's position, such a charge undermines the requirement that a verdict in a criminal case reflect unanimity of agreement freely arrived at by each juror. *United States v. Fioravanti, supra,* 412 *F.*2d at 417- 418. "Which ever adversary it favors, in urging minority jurors to reconsider their votes the *Allen* charge places excessive and illegitimate pressures on the deliberating jury." *People v. Gainer,* 19 *Cal.*3d 835, 850, 566 *P.*2d 997, 1006, 139 *Cal.Rptr.* 861, 870 (Sup.Ct.1977). One commentator has synthesized such concerns as follows:

> Although the language of the *Allen* charge contains a reminder that the jurors should vote only for a verdict with which they conscientiously agree, it may easily influence a minority juror to acquiesce in the majority vote. The charge is expressly directed at the minority jurors. They are importuned to reconsider their decision with a disposition to being convinced and told of their duty to decide the case if they can conscientiously do so. The emphasis of the charge is upon reaching a verdict, not upon voting one's conscientious convictions, and it hardly seems unreasonable that the jury, already frustrated by its inability to agree, will attach such a meaning to it. Moreover, since the majority is not usually urged to reconsider its position, there is an implication, buttressed by the particularly powerful position of the judge giving the instruction, that the majority is correct and that the minority should yield its position and conform to the majority. Even if the *Allen* charge may not in fact be coercive in a particular fact situation, at best it injects a temptation to the jury to settle for majority rule rather than the impartial individual determination of each juror. [Note, "Due Process, Judicial Economy and the Hung Jury: A Reexamination of the *Allen* Charge," 53 *Va.L.Rev.* 123, 143 (1967)]

In other but related contexts, this Court has disapproved even subtle intrusions into the neutral area of jury deliberations. In *State v. Christener,* 71 *N.J.* 55 (1976), we held that the trial judge committed error by delivering a first degree murder instruction when the proofs failed to establish the requisite elements of that crime, and that it was plain error requiring reversal even though the jury found defendant not guilty of murder in the first degree. The recognition of plain error rested not on a showing of actual prejudice but rather on "the potentially prejudicial influence that an unsupported instruction will wield in jury deliberations." *Id.* at 71. Similarly, in *State v. Simon,* 79 *N.J.* 191, 199–200 (1979), the Court reversed defendants' convictions and disapproved further use of special interrogatories in criminal trials, emphasizing that "[t]he singular vice of special interrogatories, particularly in a criminal trial, is their potential for destroying the ability of the jury to deliberate upon the issue of guilt or innocence free of extraneous influences" and that "[t]he subtly coercive effect interrogatories can have upon the course of a jury's deliberations . . . is antithetical to the untrammeled functioning of the jury."

In the earlier decision of *In re Stern,* 11 *N.J.* 584, 588 (1953), this Court explicitly recognized that in an incompetency proceeding a supplemental instruction to a deadlocked jury that stressed the financial burden of a retrial "has a natural tendency to interfere with the exercise of unfettered and unbiased judgment, by means of an illusory consideration or overemphasis of an extraneous factor . . . .." Such an improper mandate to a jury touches the right to a free and untrammeled verdict which is the core of the right to trial by jury. The Court further observed that

> [a]n outward-seeming agreement against the compulsions of the jurors' own consciences is but a perversion of the principle of trial by jury. A verdict that does not rest upon the convinced understanding of the individual jurors can have no sanction. [*Id.* at 588–589.]

The Court in *Stern* believed that improperly coercive language stressing extraneous factors in a jury charge could be overcome or "balanced" by language to the effect that no juror "should surrender his conscientious scruples or personal convictions . . .." *Id.* at 589. In the later decision of *Williams,* which involved a criminal trial, the view was expressed that the use of a coercive *Allen* charge was not error so long as it included balancing language to the effect that jury "agreement is not to be had at the sacrifice of the conscientious convictions of the individual jurors." 39 *N.J.* at 484. See also *State v. Hutchins, supra,* 43 *N.J.* at 94–96, *cf. State v. DiModica, supra,* 40 *N.J.* at 414–415 (absence of balancing language not fatal where supplemental charge contained "no coercive element").

There appears to be no obvious basis for the assumption that jurors subjected to mental pressure by reference to extraneous, coercive factors in an instruction can extricate themselves from such coercive influence. There is rather equal cause to believe that a mind once bent in a particular direction is not easily straightened. It seems more likely that jurors who are forcefully admonished to come to an agreement cannot without extraordinary mental fortitude heed a contrary suggestion *not* to come to such an agreement. *Cf. State v. Simon, supra,* 79 *N.J.* at 201 (jurors "forced into a premature consideration of criminal guilt" cannot be expected to overcome such feelings by a general instruction to disregard prior deliberations). We simply have no confidence in the rule that tolerates a coercive *Allen* charge on the supposed efficacy of balancing language to overcome its inherent pressures. *Cf.* Charrow & Charrow, "Making Legal Language Understandable: A Psycholinguistic Study of Jury Instructions," 79 *Colum.L.Rev.* 1306, 1357–1360 (1979) (observing even correct jury instructions may defy comprehension). Since the fundamental right to a trial by an impartial jury is at stake, we resolve our doubts against its continued use.

■ We come to the conclusion that the *Allen* charge conveys both blunt and subtle pressure upon the jury, pressure which is inconsistent with jury freedom and responsibility. Such a charge does not permit jurors to deliberate objectively, freely, and with an untrammeled mind. We accordingly hold that such a charge containing coercive features should not be given to a jury in the trial of a criminal case. To the extent our earlier decisions accepted such a charge, even with language intended to balance its coercive features, e. g., *State v. Williams, supra; State v. DiModica, supra; State v. Hutchins, supra,* they are hereby disapproved and are not to be followed in this respect. We need not determine whether the practice which we now repudiate offends constitutional rights. The unfairness attendant upon the use of the conventional *Allen* charge contravenes our own supervisory standards as to the basic requirements of a fair trial. These grounds are sufficient to prohibit use of such a charge. *State v. Simon, supra,* 79 *N.J.* at 203; *State v. Tropea,* 78 *N.J.* 309, 318 (1978); *State v. Gregory,* 66 *N.J.* 510, 518 (1975).

## II

■ The question that follows is whether the *Allen* charges as given to the jury in this case were deficient and, if so, whether, under the circumstances of this trial, including the repeated use of the charge, the error is reversible. It must be determined whether this use constituted plain error since there was no objection interposed by defendant to the recitation of these charges in this case. The test for plain error is whether under the circumstances "the error possessed a clear capacity for producing an unjust result," *State v. Melvin,* 65 *N.J.* 1, 18 (1974), that is, "one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached," *State v. Macon,* 57 *N.J.* 325, 336 (1971). See *State v. Stefanelli,* 78 *N.J.* 418, 435 (1979); *In re Stern, supra,* 11 *N.J.* at 590; *R.* 2:10–2.

The first *Allen* charge was given to the jury when the jury announced a deadlock a few hours after it had commenced deliberations. The instruction very clearly counseled the dissenting jurors to question the reasonableness of their own judgments, simply because they were not among the majority.[3] The jury resumed its deliberations and several hours later informed the court that "it is virtually impossible to reach a unanimous decision." The judge suspended deliberations until the next day and sent the jury home. On reconvening the jury the next morning, the judge delivered his second supplemental instruction. It repeated the same admonition to the dissenting jurors. The jury again resumed deliberations and approximately three hours later sent a third note stating "this jury has sincerely tried to reach a unanimous verdict but it is not possible." A third supplemental charge then was given which advised the jury of the necessity of a retrial and the fact that a second jury would be called upon to decide the same case and it further intimated that a mistrial was expensive and inconvenient.

■ The record strongly supports the conclusion that the three supplemental charges, with repeated and unfair focus upon the dissenting jurors and the significant reference to the inconvenience and costs of a mistrial and retrial, placed undue pressure upon these jurors. The cumulative effect of the charges was inherently coercive and this potential for jury coercion was sufficiently prejudicial to warrant a reversal of Czachor's convictions.

We are also satisfied that reversible error occurred in this case in the utilization of the *Allen* charge a third time, after the jury had engaged for many hours in serious deliberations and report-

---

[3]This initial *Allen* charge did not contain all of the coercive features characteristic of conventional *Allen* charges, *i. e.*, *ante* at 398–399. The only coercive feature included in the first charge given by the trial court was its focus upon the dissenting jurors. The court admonished the dissenting jurors in this fashion in the language of the original *Allen* charge quoted *ante* 395.

ed that despite sincere efforts, a unanimous verdict was not possible. This was neither a long nor complicated trial. Testimony by the four witnesses, including defendant, took only one day. With respect to each of the six charges, the main issue was the credibility of the witnesses. If a repetition of the *Allen* charge is "a lecture sounding in reproof," *United States v. Seawell*, 550 *F.*2d 1159, 1163 (9 Cir. 1977), *cert.* den. 439 *U.S.* 991, 99 *S.Ct.* 591, 58 *L.Ed.*2d 666 (1978), it is even more difficult to justify a third iteration.

In this case the fundamental error involved in the repeated use of the *Allen* charge cannot be salvaged or erased by recourse to the harmless error doctrine. We have recognized that errors which impact substantially and directly on fundamental procedural safeguards, and particularly upon the sensitive process of jury deliberations, are not amenable to harmless error rehabilitation. Their prejudicial effect "cannot be readily measured by the empirical or objective assessment of the evidence bearing upon defendant's guilt." *State v. Simon, supra,* 79 *N.J.* at 206. A defendant confronted with this kind of trial error need not demonstrate actual prejudice in order to reacquire his right to a fair trial. See, *e. g., People v. Gainer, supra,* 19 *Cal.*3d at 855, 566 *P.*2d at 1008, 139 *Cal.Rptr.* at 872. We conclude therefore that in this case the repeated use of the *Allen* charges constituted plain error and thus requires a reversal of defendant's convictions and a remand for a new trial.

### III

Since we have declared that the conventional *Allen* charge is invalid and that defendant in this case, because of the repeated use of such a charge even as modified, is entitled to be retried, it is appropriate that we provide guidance to trial judges on the proper procedures to follow in the event of a jury deadlock in a criminal trial.

Although not placed directly in issue before us, we have reviewed and considered the propriety of the current New Jersey Model Criminal Charge on this point. See New Jersey Model Jury Charges, Criminal, No. 4.190 (1978). That charge is measurably better than the series of charges given by the trial court in this case. Nevertheless, the New Jersey model instruction retains a modified reference to the necessity and inconvenience of a retrial; it suggests that a failure to agree on a decision will reflect adversely on the sophistication, intelligence, impartiality, and competence of the jurors. If the instruction is given only after the jury has reported a deadlock, its natural tendency is to put pressure on dissenting jurors to join with those ostensibly sophisticated and intelligent jurors who have resolved all reasonable doubts. Additionally, the New Jersey model charge repeatedly emphasizes a "duty" to agree on a verdict. Even though that admonition is followed by a qualified reminder for jurors not to surrender conscientious views, such "balancing" language is ineffective. See *ante* at 401.

By way of contrast, we advert to the model charge suggested under the American Bar Association (ABA) standards. See ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Trial by Jury*, § 5.4, at 145–147 (Approved Draft 1968) (hereinafter *ABA Standards*). This sample instruction does not have the particular infirmities of the conventional *Allen* charge, nor does it present the deficiencies perpetuated in the New Jersey model charge. We therefore recommend the use of the ABA model charge in criminal trials.[4]

---

[4]*The sample charge which is consistent with the guidelines of ABA Standards* § 5.4 reads as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each you must decide the case for yourself,

The validity of the *Allen*-type charge involves not only the content of such instructions but also the circumstances under which it may be given. We concur in the recommendation of the *ABA Standards* report that it is appropriate to give such a charge in the initial instructions to the jury as a part of its general duties. *ABA Standards, supra,* at 146; see *State v. Hodge, supra,* 162 *N.J.Super.* at 46.

With respect to a repetition of such a charge, it has been urged by defendant in this case that the Court adopt a *per se* or fixed rule which would limit the number of times an *Allen* charge can be given to a deadlocked jury. Such a rule, prohibiting the repetition of the charge, was adopted in *United States v. Seawell, supra,* wherein the Court concluded that the *Allen* charge had an "inherently coercive effect" and that to permit a repetition of the *Allen* charge would be an unwarranted expansion of an instruction which, unembellished, "approaches the ultimate permissible limits." 550 *F.*2d at 1162–1163 (quoting *Sullivan v. United States,* 414 *F.*2d 714, 716 (9 Cir. 1969)). The court in *Seawell,* however, was dealing with the *Allen* charge in its unadulterated form. Where the *Allen* charge itself has been modified to eliminate its coercive features, it would not appear necessary or desirable to supplant judicial discretion in favor of an inflexible *per se* rule with respect to its repeated use. See, *e. g., United States v. Fossler,* 597 *F.*2d 478, 485 (5 Cir. 1979); *United States v. Robinson,* 560 *F.*2d 507, 517 (2 Cir. 1977) (en

but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. Your are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. [Commentary to § 5.4(a), *ABA Standards, supra,* at 146–147 (quoting Jury Instructions and Forms for Federal Criminal cases, 27 *F.R.D.* 39, 97–98 (1968))]

banc), *cert.* den. 435 *U.S.* 905, 98 *S.Ct.* 1451, 55 *L.Ed.*2d 496 (1978); *United States v. Seawell, supra,* 550 *F.*2d at 1166 (Wright, J., dissenting); *cf. Britt v. State,* 402 *A.*2d 808, 810 (Del.Sup.Ct.1979) ("the giving of multiple '*Allen*' charges is to be avoided and may constitute reversible error . . .").

The *ABA Standards* report provides that the instruction may, as a matter of sound discretion, be repeated if the trial judge finds that the jury has been unable to agree. *ABA Standards, supra,* at 156. It also suggests that the judge may discharge a hung jury if it appears that there is no reasonable probability of agreement. *Id.* at 156–157. These guidelines indicate that if the jury has reported a definite deadlock after a reasonable period of deliberations, it would be improper to give or repeat the instruction. In determining what constitutes a reasonable length of time, a judge should weigh all the relevant circumstances including the length and complexity of the trial.

■ Accordingly, we direct that hereafter in criminal cases trial courts should not utilize the New Jersey model jury charge in situations where jurors have been unable to reach unanimous verdicts. Courts should instruct jurors in accordance with the *ABA Standards* § 5.4 and should include such instructions in the initial general charge to the jury and, with respect to its repeated use, should be guided in the exercise of sound discretion by such factors as the length and complexity of trial and the quality and duration of the jury's deliberations.

We recognize, of course, that these are matters upon which reasonable judgments may differ. While we have therefore approved the application of the *ABA Standards* § 5.4 in criminal trials, these problems and their solutions warrant further study. Accordingly, it is appropriate that the entire subject be referred to the Supreme Court's Committee on Criminal Practice for its review and recommendations.

## IV

■ One other important matter must be addressed, that is, whether our holding is to be given prospective or retroactive application. We conclude that the rule which we have enunciated prohibiting the use of the current *Allen* charge is to be given limited retroactive effect.

The present case is unlike our recent case, *State v. Howery*, 80 *N.J.* 563 (1979), which involved the application of the exclusionary rule. The Court in that case deemed it appropriate to give only prospective effect to its ruling that evidence, otherwise relevant and competent, must be excluded on grounds that it had been obtained in violation of the Fourth Amendment. *Id.* at 571. In contrast, the principle presented by this case deals with the ultimate fairness and soundness of the jury's verdict. This case is readily distinguishable from *Howery* in that the primary rationale for our holding that the use of *Allen* charges is reversible error— the potential for undue pressure on a divided jury—directly concerns both the reliability of the verdict and the integrity of the truth-determining process. This basic difference in the respective cases suggests a different treatment of the issue of retroactivity.

In *State v. Nash*, 64 *N.J.* 464, 469–470 (1974), this Court identified several possible approaches to the question of the retroactive effect to be afforded decisions in the criminal field. The Court noted three relevant considerations for choosing among these alternative applications of retroactivity: (1) the purpose of the underlying rule and whether this purpose would be furthered by a retroactive application of the court's decision, (2) the degree of reliance placed upon the former rule by those who had administered it, and (3) the effect upon the administration of justice of a retroactive application of the new rule. We held that the particular rule there implicated, prohibiting the subsequent imposition of an increased sentence where a defendant pursues an unsuccessful appeal from a municipal court conviction, *State v. DeBonis*, 58 *N.J.* 182 (1971), would be applied

retroactively to all cases then pending on direct review. 64 *N.J.* at 474. In so ruling, the Court in *Nash* reasoned that *DeBonis* was "grounded on the strong state policy that those tried in municipal courts should not suffer possible injustices arising from that admittedly imperfect judicial system." *Id.* at 472. The case was therefore distinguishable from those cases which simply create prophylactic rules to prevent police misconduct (*e. g., Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.2d* 694 (1966)) or to assure that sentencing is based only upon proper considerations (*e. g., North Carolina v. Pearce*, 395 *U.S.* 711, 89 *S.Ct.* 2072, 23 *L.Ed.2d* 656 (1969)). *Id.* 64 *N.J.* at 473. The Court also observed that the new rule would apply to a minimal number of cases and would not require further hearings since the initial municipal court sentence could be applied automatically. *Ibid.*

The primary purpose of the rule here adopted, replacing the *Allen* charge, is to secure a criminal defendant's right to an impartial jury verdict in accordance with our own supervisory standards for the conduct of criminal trials. Critical to achieving such an impartial verdict is the independent and honest judgment of each juror that the State has proved defendant's guilt beyond a reasonable doubt. The coercive potential associated with the objectionable aspects of the *Allen* charge and their undue repetition (*ante* at 403) directly implicates the deliberative process used to determine guilt or innocence, going " 'plainly to the integrity of the proceedings . . ..' " *State v. Simon, supra,* 79 *N.J.* at 205. Hence, it is fair and just that the rule now fashioned by this Court under its supervisory powers be available to defendants who may have been victimized by such a fundamental shortcoming in the trials which resulted in their convictions.

Since the rule which we now enunciate does not rest on constitutional grounds but on the Court's own standards for criminal justice, the decision should be given a limited retrospec-

tive application. Without the benefit of data as to the number and kinds of cases that would be affected by a rule of general or complete retroactivity and the impact which such an application would have on the administration of justice, the rule prohibiting *Allen* charges should be applied to cases pending at the time of this decision. Like considerations, we note, persuaded the California Supreme Court to adopt a similar rule of limited retroactivity in *People v. Gainer, supra*, 19 *Cal.*3d at 853, 566 *P.*2d at 1007, 139 *Cal.Rptr.* at 871.

It is appreciated that appeals from convictions which come within this limited rule of retroactivity may present a variety of circumstances. There will undoubtedly be some appeals coming within the rule of limited retroactivity in which all or the most objectionable characteristics of the typical *Allen* charge will not be present. In such instances, it would be appropriate for the appellate court to review the surrounding circumstances in order to decide whether there was sufficient potential for coercion to justify reversal. In other situations, like the present case, where a coercive *Allen* charge had been given three times to a deadlocked jury in a brief and relatively simple criminal trial, a reversal and retrial will ordinarily be required without a further showing of actual prejudice. *People v. Gainer, supra*, 19 *Cal.* 2d at 855, 566 *P.*2d at 1008, 139 *Cal.Rptr.* at 872.

Accordingly, the judgment below is reversed, the judgment of conviction is set aside, and the matter remanded for a new trial.

Justices SCHREIBER and POLLOCK vote with the opinion in its entirety.

Chief Justice WILENTZ and Justices SULLIVAN and PASHMAN vote with Parts I, II, and III of the opinion and concur in the result of Part IV.

Justice CLIFFORD did not participate.

PASHMAN, J., concurring.

I fully concur in the decision of the Court in Parts I, II and III. I write separately to state the bases for my agreement with the result in Part IV, which concerns the retroactive application of today's decision.

My Brother Handler today asserts, "The coercive potential associated with the objectionable aspects of the *Allen* charge and their undue repetition * * * directly implicates the deliberative process used to determine guilt or innocence * *." *Ante* at 409. Because of the effect of *Allen*-type charges on the integrity of the fact-finding process, it is possible that the rule which we announce today should be accorded *complete*, rather than limited retroactive effect. See *Williams v. United States*, 401 *U.S.* 646, 653, 91 *S.Ct.* 1148, 1152, 28 *L.Ed.2d* 388 (1973). However, since the Court bases the rule on its "own standards for criminal justice" and not constitutional grounds, *ante* at 409, it is unclear whether complete retroactivity is in fact required. This issue was neither briefed nor argued, and as the Court notes, we are "[w]ithout the benefit of data as to the number and kinds of cases that would be affected by a rule of general or complete retroactivity," *ante* at 410. I would therefore adopt the position taken by the California Supreme Court in *People v. Gainer*, 19 *Cal.*3d 835, 139 *Cal.Rptr.* 861, 566 *P.2d* 997, 1007 (Sup.Ct.1977), and leave resolution of this issue for a case which squarely presents it. The Court has apparently chosen this approach. *Ante* at 409.

I agree with the Court that some of the questions raised by the *Allen* charge—involving the accuracy of guilty verdicts—are distinguishable from the issues raised in the exclusionary rule context. However, both the Court's rule governing *Allen*-type charges and the exclusionary rule are based on "standards for criminal justice" which are designed to protect fundamental constitutional rights. Thus I continue to subscribe to the view that the "imperative of judicial integrity" militates in favor of limited retroactivity for applications of the exclusionary rule as

well as today's decision. *State v. Howery,* 80 *N.J.* 563, 578 (1979) (Pashman, J., dissenting). Whatever "different treatment of the issue of retroactivity" may be suggested by the "basic difference in the respective cases," *ante* 408, it would not mandate that only prospective effect be given to exclusionary rule decisions. If anything, it might require giving complete retroactive effect to cases such as the one before us.

Chief Justice WILENTZ and Justice SULLIVAN join in this opinion.

*For concurrence in result as to Part IV* —Chief Justice WILENTZ and Justices SULLIVAN and PASHMAN.

*For reversal and remandment* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK—6.

*For affirmance* —None.