606 A.2d 1154

STATE OF NEW JERSEY, PLAINTIFF, v. GEORGE
HENRY PARKER, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Union County

Decided February 6, 1992.

*William Kolano, Susan M. MacMullan,* for the State.
*Carl J. Herman, David B. Glazer,* for defendant.

WERTHEIMER, J.S.C.

This matter comes before this court on a motion by defendant to have a single jury decide both the guilt and penalty phases of his capital murder trial despite statements by the New Jersey Supreme Court in *State v. Biegenwald,* 126 *N.J.* 1, at 44, 594 *A.*2d 172 (1991) (hereinafter *Biegenwald IV* ).

This case arises out of a homicide which occurred at a Domino's Pizza store in Plainfield, New Jersey during the mid-afternoon of July 31, 1990. On March 4, 1991 the State filed a Notice of Aggravating Factors pursuant to *N.J.S.A.* 2C:11–

3(c)(2) and *Rule* 3:13–4(a), to wit: (1) the defendant has previously been convicted of murder (*N.J.S.A.* 2C:11–3(c)(4)(a)); (2) the murder was committed for the purpose of escaping detection, apprehension, trial, punishment or confinement ... (*N.J.S.A.* 2C:11–3(c)(4)(f)); (3) the offense was committed while the defendant was engaged in the commission of, or in an attempt to commit, or flight after committing or attempting to commit robbery ... (*N.J.S.A.* 2C:11–3(c)(4)(g)). The only aggravating factor relevant to this motion is the first.

The statute that governs juries in capital cases reads in pertinent part:

> ... where the defendant has been tried by a jury, the proceeding shall be conducted by the judge who presided at the trial and before the jury which determined the defendant's guilt except that, for good cause, the court may discharge the jury and conduct the proceeding before a jury empaneled for the purpose of the proceeding (e.g., the penalty phase).
>
> *N.J.S.A.* 2C:11–3(c)(1)

In 1988, our Supreme Court recognized the potential need for two juries in a capital case. See *State v. Moore,* 113 *N.J.* 239, 550. *A.*2d 117 (1988). However, in 1991 it addressed the situation in more detail. Specifically, the Supreme Court stated in *Biegenwald IV,* 126 *N.J.* at pages 43–45, 594 *A.*2d 172:

> Finally, we recognize that our finding that defendant is entitled to *voir dire* potential jurors on the possible blinding impact of the c(4)(a) factor most likely will require a two-jury system for all capital cases in which the State seeks to prove that factor. That is because aggravating factor c(4)(a), unlike all other aggravating factors, is proved by evidence not generally admissible during the determination of guilt or non-guilt. *See Evid.R.* 55.

It also noted in *State v. Erazo,* 126 *N.J.* 112, 594 *A.*2d 232 (1991) that a separate penalty-phase jury is favored when the guilt-phase evidence is so prejudicial as to render unlikely the ability of a jury to sit fairly on both phases of the trial.

Defendant and his attorneys argue in the case *sub judice* that they have determined "that it would not be advantageous for Mr. Parker to have two juries in this matter" and that defendant understands why it is preferable for him to have his case decided by a single jury. Defense attorneys have indicated a willingness to place "a number of case-specific reasons"

on the record at an *in camera* hearing before the court at an appropriate time.

Defendant's attorneys further posit that *Biegenwald IV* speaks in permissive and equivocal terms, *e.g.* two juries should "almost invariably" be used when aggravating factor (c)(4)(a) is advanced. Said aggravating factor *"most likely* will require a two-jury system". (Emphasis added) Defendant and his attorneys both submitted affidavits to the court in support of their position which posit that defendant may knowingly and voluntary waive any right he may have to two juries. Defendant states that the language in *Biegenwald IV* on which the State relies in support of its position is *dicta*, which, parenthetically, did not even attain a headnote in the nineteen headnotes of the decision.

The State argues that our Supreme Court has provided "clear guidance" to this court which cannot be ignored. The State believes there are "greater evils" generated "by the use of highly prejudicial evidence that can affect the determination of ... guilt" quoting from *State v. Long,* 119 *N.J.* 439, 518, 575 *A.*2d 435 (1990). Noting that in *State v. Koedatich,* 112 *N.J.* 225, 329–330, 548 *A.*2d 939 (1988) our Supreme Court would not allow "even a knowing and voluntary waiver" by defendant of his right during the penalty phase to present mitigating evidence because the State has an "interest in a reliable penalty determination", the State argues that courts at times must protect defendants against themselves.

This court notes there are many reasons why a defendant may wish to proceed as Mr. Parker does. Some are case specific; some are based on trial experience and psychology. Courts have long recognized the phenomenon of "whimsical doubt" that may protect a defendant from imposition of the death penalty by virtue of the jury's verdict in the guilt phase. While no empirical data may be available, the 5th Circuit recognized in *Smith v. Balkcom,* 660 F.2d 573 (5th Cir.1981)

mod. on other grounds, 671 *F.*2d 858 (5th Cir.), *cert. den.,* 459 *U.S.* 882, 103 *S.Ct.* 181, 74 *L.Ed.*2d 148 (1982):

> Even (whimsical doubt) serves the defendant, for the jury entertaining doubt which does not rise to reasonable doubt can be expected to resist those who would impose the irremedial penalty of death.

Identification is a real issue in the case *sub judice* also. It does not stretch credulity to suggest that an experienced trial attorney may conclude that a jury which convicts a defendant involving substantial questions of identification would be less likely to return a verdict requiring imposition of the death penalty. Veteran capital case trial judges can all attest that the most commonly expressed concern by jurors during *voir dire* is the irreversibility of a death sentence. This could be called "I-couldn't-live-with-myself-if-someone-else-confesses-after-this-defendant-has-been-executed" syndrome. It is real. It exists. Why should not someone who is faced with the death penalty hope to take advantage of it? A defense attorney who wishes to take advantage of this psychological edge in the event of an appropriate finding of guilt should be allowed to exercise his professional judgment.

In point of fact, defendant's lead attorney has tried approximately one hundred criminal trials since 1979. About fifteen of those cases have been non-capital murder cases, while seven have been capital murder prosecutions. Co-counsel has been involved in four capital murder trials and is a certified criminal trial attorney. Our system of justice recognizes that the right to effective, *unhindered,* assistance of counsel has been held to be an "immutable principle of justice which inhere in the very idea of free government." *Powell v. Alabama,* 287 *U.S.* 45, 71–72, 53 *S.Ct.* 55, 65, 77 *L.Ed.* 158, 172 (1932). (Emphasis added) New Jersey has long recognized the need to allow counsel to engage in "matters of trial strategy." *State v. Williams,* 39 *N.J.* 471, 489, 189 *A.*2d 193 (1963) *cert. den.* 382 *U.S.* 964, 86 *S.Ct.* 449, 15 *L.Ed.*2d 366 (1965), *overruled on other grounds, State v. Czachor,* 82 *N.J.* 392, 413 *A.*2d 593 (1980).

In fact, one Model Civil Jury Charge advises juries in legal malpractice cases that:

The law does not require that an attorney guarantee a favorable result ... The attorney is not an insurer ... an attorney must be allowed (to) exercise (his/her) judgment ...

*Model Civil Jury Charge*, Charge 5.29.

Surely, in *Biegenwald IV* our Supreme Court did not intend to prevent trial attorneys from engaging in trial strategy nor to mute their "feel" of their case nor to squelch the legitimate exercise of professional judgment in case specific circumstances. Our court, whether at the trial or appellate level, should no more attempt to be a super trial lawyer than it should be a super, and dispositive, 13th juror. This court is confident in its conclusion that the Supreme Court chooses its language carefully. Whether *dicta* or not, the language of *Biegenwald IV* is permissive not mandatory.

If the trial court has a role in this milieu, it is to make a record *in camera* outside the presence of the State's representatives as to the reasons for the defense decision. If necessary, the trial court may be compelled to engage in punctilious inquiry of defendant, to ascertain whether the decision was made with his in-put and that he knowingly and voluntarily relinquishes his rights and options without threat, promise or coercion. Of course, such inquiry should only be undertaken with the approval of defendant's attorneys. If such approval is withheld that could severely impact on the court's ability to entertain defendant's request to proceed with one jury.

Therefore, this court will conduct such an *in camera* hearing as defendant requests, and depending upon what is presented there, defendant's application to proceed with one jury may be granted despite the aforementioned language of our Supreme Court in *Biegenwald IV, supra.* The record should then be temporarily sealed to await appellate review, if any. This procedure assures preservation of the decisions made, the tenor and immediacy of the moment and renders less likely subse-

quent, self-serving, result-oriented positions that can mislead courts during appeals.

Finally, it is possible to ascertain whether the c(4)(a) aggravating factor would have "a blinding impact" upon prospective jurors by asking various hypothetical questions to each prospective juror which could elicit their feelings. Jurors should be instructed that there are no "right" or "wrong" answers to open-ended *voir dire* inquiries, but rather such merely develop "attitudes" and "feelings". If a juror advises either that he/she would always or never vote a verdict requiring imposition of the death penalty because of that factor alone, he/she should be excluded. *Witherspoon v. Illinois*, 391 *U.S.* 510, 88 *S.Ct.* 1770, 20 *L.Ed.*2d 776 (1968); *State v. Bey (II)*, 112 *N.J.* 123, 548 *A.*2d 887 (1988). That aggravating factor can be broached with each juror with the admonition that it may or may not be applicable to the case at bar so that it is really not formally presented to the jury, if at all, until the penalty phase.