**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2446-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

EDDIE ROBERSON,

     Defendant-Appellant.

_____

Submitted December 10, 2018 – Decided December 26, 2018

Before Judges Messano, Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 13-10-2585.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from his convictions for first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). The State produced evidence at the jury trial that defendant shot an individual (the victim), who died shortly thereafter. The State's theory was that defendant shot the victim because defendant did not want to honor a Super Bowl bet that he and the victim made at a party shortly before the murder. The State produced a witness who identified defendant as the victim's shooter and claimed to have overheard a conversation about a football bet between defendant and the victim at the party.

Defendant raises the following points on appeal:

> POINT I
> THE TRIAL [JUDGE]'S COERCIVE INSTRUCTION TO CONTINUE DELIBERATIONS AFTER THE JURY INDICATED THAT IT WAS AT AN IMPASSE DEPRIVED DEFENDANT OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
>
> POINT II
> THE TRIAL [JUDGE] ERRED BY DENYING DEFENDANT'S MOTION FOR A WADE[1] HEARING TO TEST THE RELIABILITY OF A CONCEDEDLY SUGGESTIVE SINGLE-PHOTO

---

[1] United States v. Wade, 388 U.S. 218 (1967).

A-2446-16T1

SHOWUP CONDUCTED THREE DAYS AFTER THE INCIDENT, WITHOUT PROPER INSTRUCTIONS AND WITH IMPROPER FEEDBACK FROM THE OFFICER.

POINT III
THE TRIAL [JUDGE] FURTHER ERRED BY EXCLUDING THE VICTIM'S CELL PHONE RECORDS AS INADMISSIBLE HEARSAY.

POINT IV
IF THE DEFENDANT'S CONVICTIONS ARE NOT REVERSED, THIS MATTER MUST BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL [JUDGE] EFFECTIVELY DENIED DEFENDANT HIS [RIGHT] TO ALLOCUTE. (Not raised below).

We affirm.

I.

Shortly after it began deliberating on a second day, the jury sent the judge a note explaining – not that it was deadlocked – but rather that it was at an impasse. The judge brought the jury out and said:

> Now, it took us seven to eight day[s'] worth of testimony to present the evidence in this case. We entered into evidence approximately 250 exhibits. Yesterday, to the best of my recollection, you deliberated for approximately [thirty-five], [forty] minutes after my final charge. This morning you went into the jury room at approximately 9:35 [a.m.]. Within [fifteen] minutes thereafter, I received a note that you wanted to review a number of the disks. We came back out, reviewed that testimony. It took approximately an

3

hour or so.  You went back.  About [11:50 a.m.] or so I received a note you were at an impasse.

Ladies and gentlemen, we expect a much better effort in attempting to arrive at a conclusion of this case than the effort you've given us so far with the indication you're at an impasse.  Okay?

So please return to the jury room, review all of the evidence fairly and impartially, resume your deliberations and give us a real effort to arrive at a just and fair conclusion of this case.  Okay?

Defense counsel objected properly to this charge and pointed out that, "[g]enerally, when a jury indicates they are at an impasse the [c]ourt generally instructs them to go back, reevaluate and see if they can continue to deliberate."[2] In response, the judge said that he would have given such a charge "[h]ad [the jury] given an effort, a substantial effort . . . ."  He continued, "[i]f they come back again, and in my determination at that point they've given it a sufficient effort and realistic effort, in light of the time it took to put on this case, I will give that charge."  At this point, the jury returned to deliberate and returned a verdict in two hours.

---

[2]  Defense counsel did not object before the judge gave the charge.  The judge advised counsel that he was going to instruct the jurors to resume deliberations because they were only deliberating for a few hours, and defense counsel responded "[n]o comment."

A-2446-16T1

Our Supreme Court has not allowed "even subtle intrusions into the neutral area of jury deliberations." State v. Czachor, 82 N.J. 392, 400 (1980). Instead, the relevant model jury charge (the model jury charge) states:

> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You are not partisans. You are judges – judges of the facts.
>
> [Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (2013).]

In Allen v. United States, the trial judge gave a jury instruction that "emphasized to the deadlocked jury that each juror 'should examine the question . . . with a proper regard and deference to the opinions of each other . . . [and] that they should listen, with a disposition to be convinced, to each other's arguments.'" Czachor, 82 N.J. at 395 (alterations in original) (quoting Allen v. United States, 164 U.S. 492, 501 (1896)). The judge also told the jury that "if much the larger number were for conviction [or for acquittal], a dissenting juror should consider whether his doubt was a reasonable one . . . [and] whether [the

A-2446-16T1

juror] might not reasonably doubt the correctness of a judgment which was not concurred in by the majority." Id. at 395-96 (alterations in original) (quoting Allen, 164 U.S. at 501).

But in the years since, our Supreme Court recognized that the Allen charge has come under "severe criticism" and that,

> [f]ault with the charge rests primarily on the grounds that it is potentially coercive and inaccurate, that appellate courts are ill-equipped to detect the existence or gauge the extent of jury coercion or confusion, and that the interest in avoiding the expense of mistrial is outweighed by the substantial risk that the right to a fair trial at the hands of an impartial jury is jeopardized by its use.
>
> [Id. at 397-98.]

The Court also explained:

> It is fair to say that the typical Allen charge does not simply remind jurors of their duty to cooperate in collective deliberations. It has a rather different thrust. The charge is intended to undo a jury deadlock. It tends therefore to focus upon possibly the weakest links in the chain locking the jury in disagreement, namely, the minority holdouts on the jury. Hence, the charge usually admonishes specifically and pointedly only those in the minority to reconsider their beliefs in light of the adverse position held by the majority. It also exerts pressures upon jurors by casting indirectly upon them a personal responsibility and sense of guilt for the impasse. . . . The charge further intimates that the dissenting jurors may not be acting properly or conscientiously since another similar jury will be called

6

upon in a new trial to perform the identical task and presumably will achieve it, i.e., reach a unanimous verdict on the same evidence.

[Id. at 398 (emphasis added).]

The Court held that "the Allen charge conveys both blunt and subtle pressure upon the jury, pressure which is inconsistent with jury freedom and responsibility. Such a charge does not permit jurors to deliberate objectively, freely, and with an untrammeled mind." Id. at 402. Thus, the Court found that "such a charge containing coercive features should not be given to a jury in the trial of a criminal case." Ibid.

We consider two concerns when evaluating a judge's response to a jury's inability to reach a unanimous verdict: "(1) whether the supplemental instruction has the capacity to improperly influence the dissenting jurors to change their votes; and (2) whether 'the weighty role that the judge plays in the dynamics of the courtroom' improperly coerced the jury into returning a verdict." State v. Dorsainvil, 435 N.J. Super. 449, 481 (App. Div. 2014) (quoting State v. Figueroa, 190 N.J. 219, 238 (2007)). If the "difference of opinion between members of the jury is clearly intractable, . . . then the jury is deadlocked and a mistrial should be declared." State v. Ross, 218 N.J. 130, 145 (2014) (alterations

in original) (quoting Figueroa, 190 N.J. at 237). Here, the jury indicated that it was "at an impasse," but not that its different opinions were "intractable." Ibid.

"A judge has discretion to require further deliberations after a jury has announced its inability to agree, but exercise of that discretion is not appropriate 'if the jury has reported a definite deadlock after a reasonable period of deliberations.'" State v. Adim, 410 N.J. Super. 410, 423-24 (App. Div. 2009) (citation omitted) (quoting Czachor, 82 N.J. at 407). Here, the judge gave the instruction after the jurors deliberated for approximately two-and-a-half hours following the eight-day trial. We conclude that the jury did not report a "definite deadlock" after a "reasonable period." Thus, the judge had the discretion to require further jury deliberations.

In doing so, the judge should have given the model jury charge. We conclude, however, that the charge as given was harmless because it was not coercive. Instead, it merely reminded the jury to take its responsibility seriously. The judge did not tell any dissenting jurors to question their opinions or that they should consider shifting their views to adhere to the majority. He did not "admonish[] specifically and pointedly only those in the minority to reconsider their beliefs in light of the adverse position held by the majority." Czachor, 82 N.J. at 398. As it was not akin to an Allen charge, the charge as given was not

unduly coercive and did not place pressure upon the jury. Thus, it was not a violation of defendant's constitutional rights.

## II.

We review the denial of a <u>Wade</u> hearing under the abuse of discretion standard. <u>State v. Ortiz</u>, 203 N.J. Super. 518, 522 (App. Div. 1985). A "trial [judge]'s findings that photographic identification procedures were reliable should not be disturbed if there is sufficient credible evidence in the record to support the findings." <u>State v. Adams</u>, 194 N.J. 186, 203 (2008). If we find that the judge should not have denied the motion for a <u>Wade</u> hearing, but the identification procedure did not result in a "very substantial likelihood of irreparable misidentification," the ruling will still be affirmed. <u>State v. Cherry</u>, 289 N.J. Super. 503, 517 (App. Div. 1995).

A bodega owner (the owner) told police that he made a Super Bowl bet with defendant, whom he described as "a black guy" with short hair from the area. He claimed that defendant did not pay him his winnings from the bet. Police showed the owner a single-photo to confirm if defendant was the man that the owner had referenced. Defendant moved for a <u>Wade</u> hearing to determine the reliability of that identification, which the judge denied.

A-2446-16T1

To be entitled to a <u>Wade</u> hearing, a defendant must proffer "some evidence of impermissible suggestiveness." <u>State v. Henderson</u>, 208 N.J. 208, 238 (2011). A defendant has the initial burden of showing that this could have led to a mistaken identification. <u>Id.</u> at 288. If the judge finds that the procedure was impermissibly suggestive, then he considers the reliability of the identification, and the State has the burden of proving by clear and convincing evidence that the identification "had a source independent of the police-conducted identification procedures." <u>Id.</u> at 238 (quoting <u>State v. Madison</u>, 109 N.J. 223, 245 (1988)). "[T]he ultimate burden remains on the defendant to prove a very substantial likelihood of irreparable misidentification." <u>Id.</u> at 289.

Defendant claims that the owner's identification was suggestive. He also argues that the officer's "confirmatory feedback" after the owner had identified defendant was suggestive. After the officer asked the owner if defendant was "the guy" he made a Super Bowl bet with, he responded with "[y]es." The officer then said, "[o]kay. One hundred percent this is the person."

The State argues that this is not a <u>Wade</u> issue as the photo presented to the owner was intended to confirm the identity of the person that the owner was referring to, and not to identify a stranger "based on his observations as involved in any particular incident." The State further claims that this procedure was not

A-2446-16T1

a "show-up," as show-ups "are essentially single-person lineups: a single suspect is presented to a witness to make an identification." Id. at 259.

Here, the evidence from the owner was reliable. He testified that he was familiar with defendant and saw him on a regular basis in his bodega. He was able to identify defendant from his photograph, irrespective of defendant's different hairstyle in the picture, which he pointed out to the officer. The judge also questioned whether this was even a Wade issue, as the owner was not an eyewitness to the shooting or any interaction between defendant and the victim. He also agreed that the photo was not shown to the owner as a witness to a fleeting event. Thus, the judge did not abuse his discretion by denying defendant's motion for a Wade hearing, and the identification procedure did not result in a "very substantial likelihood of irreparable misidentification." Cherry, 289 N.J. Super. at 517.

### III.

A judge's evidentiary rulings are entitled to deference "unless there has been an abuse of that discretion, i.e., there has been a clear error of judgment." State v. Marrero, 148 N.J. 469, 484 (1997) (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)). At the conclusion of the State's case, defense counsel moved to admit text messages the victim received the day before his murder, as

A-2446-16T1

evidence of the police's purported failure to adequately investigate the case, and potentially as evidence of third-party guilt. One text that the victim received read: "Yo, do you think they would've shot us if we got out of the car or if they had a better shot?" Another message from the same number read: "Or you just think they had the piece to scare me?" An outgoing message sent a few minutes later read: "Nah, you good." The judge denied the admission of the messages, stating that the result, "intended or unintended," in admitting the messages would be hearsay.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." N.J.R.E. 801(c). Defendant argues that the text messages were not offered to prove whether the individuals referenced in the message had a gun to scare the declarant or whether they intended to shoot the victim. Instead, he argues that they were offered to show that police had information about a threat to the victim that was made less than twenty-four hours before his death, and that police failed to take investigatory action.

Regarding the relevance of the statements, the judge said,

> [t]he issue before the jury is not whether the State did everything they could have or should have . . . in their investigation in this case. The sole issue before this jury is whether or not . . . [the State] . . . provided the jury with sufficient credible evidence upon which a rational jury could arrive at a decision of whether or not

> [defendant] has been proven guilty of this charge beyond a reasonable doubt.

The relevancy of the messages was to prove that another individual, not defendant, attempted to shoot the victim. The texts would be out-of-court statements offered to prove the truth of the matter asserted, and thus inadmissible hearsay. Based on our deferential standard of review, there has not been an abuse of discretion or a "clear error of judgment" on the part of the judge that would warrant the messages being admitted into evidence under one of the hearsay exceptions.

## IV.

The judge merged the possession of a weapon for an unlawful purpose into the murder conviction and sentenced defendant to life in prison subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, concurrent to five years in prison for the unlawful possession of a weapon. We review an imposition of sentence under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). Pursuant to Rule 3:21-4(b), "[b]efore imposing sentence the [judge] shall address the defendant personally and ask the defendant if he . . . wishes to make a statement in his . . . own behalf and to present any information in mitigation of punishment." In doing so, he may answer personally or by his attorney. Ibid.

13

Defendant argues that the judge sentenced him without asking defendant if he wanted to speak on his own behalf. The judge began to find aggravating factors when the State asked if the judge was moving into the sentencing phase, at which time the judge apologized and asked defense counsel if there was "anything [he would] like to say" before the judge "[got] to sentencing." Defense counsel stated that the judge "has already indicated a desire to sentence [defendant] . . . not[]withstanding whatever [defense counsel's] arguments are." The judge then inquired as to whether defendant wanted to add anything before the judge imposed sentencing. The defendant said,

> I would like to tell the family that I'm sorry for y'all loss. But at the same time, I know that I'm still not the one. You know, I'm the man that has been accused of this conviction. But I do feel for y'all loss. I'm sorry for y'all loss.

Regardless, the judge gave him the right to allocute, which defendant exercised. Defendant was not silent. We therefore see no abuse of discretion.

In his pro se brief, defendant makes five new points, with conclusory statements that lack any basis or support. He disputes the existence of a Super Bowl bet with the victim that would have provided a motive for the murder, and instead claims that the State fabricated this story with its witness. But an independent witness – the owner – also testified to placing a Super Bowl bet

14

with defendant, and seeing defendant angry about the results of the game shortly before the shooting. The arguments in defendant's pro se brief lack sufficient merit for any further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION