**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2904-15T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JON M. PEDITTO,

     Defendant-Appellant.

_____

Argued May 16, 2018 – Decided September 13, 2018

Before Judges Alvarez, Nugent, and Currier.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 15-09-1876.

Richard E. Mischel argued the cause for appellant (Franzblau Dratch, PC, attorneys; Richard E. Mischel, on the brief).

William Kyle Meighan, Senior Assistant Prosecutor, argued the cause for respondent (Joseph D. Coronato, Ocean County Prosecutor, attorney; Samuel Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, on the brief).

PER CURIAM

Tried by a jury, defendant Jon M. Peditto was convicted of first-degree maintaining or operating a controlled dangerous substance (CDS) production facility, N.J.S.A. 2C:35-4 (count one), and fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3) (count two). Defendant was found not guilty of the remaining two counts that charged him with second-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5, and third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5. On January 29, 2016, defendant was sentenced on count one as a second-degree offender, N.J.S.A. 2C:44-1(f)(2), to eight years in custody subject to thirty-two months of parole ineligibility and a concurrent three-year term of imprisonment on the fourth-degree offense. The State concedes that the sentence on the second count was error, as the maximum for that charge is eighteen months in state prison. See N.J.S.A. 2C:43-6(a)(4). With the exception of a remand for resentencing on that count, we affirm.

I.

On August 1, 2012, Little Egg Harbor police officers inadvertently discovered a marijuana patch in the Pine Barrens. On August 7, 2012, officers from the State Police Marijuana Eradication Unit set up surveillance equipment around the site. The officers discovered a trail to the location, and concealed in

some shrubbery, a roll of black mesh, a shovel, a fertilizer bag, and a green water container. The marijuana plants had already been harvested from one plot.

At approximately 6:30 a.m., a man, later determined to be the defendant, approached the location. The officers identified themselves, then stepped out of the shrubbery and arrested him. He was read his Miranda[1] rights and asked for his name, date of birth, and address.

Detective John Anderson from the Ocean County Sheriff's Department processed the site. Officers located a black bicycle in the vicinity and identified five separate marijuana plots. Seventeen marijuana plants were collected. Defendant's vehicle was found parked several miles away.

When Ocean County Prosecutor's Office Special Operations Group Detective Joel Mahr arrived at police headquarters, he was informed that defendant wanted to speak to him. During the interview he and Detective Michael Heale conducted in a video recording room, defendant was asked to confirm that he had already been read his Miranda rights. Defendant did not respond. Mahr proceeded to read defendant his rights on tape, and after he began the section on the right to counsel, defendant interrupted and said "I don't have one." Mahr asked defendant to "just listen," and continued to read. When the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2904-15T2

officers asked defendant to sign his Miranda rights waiver form, which he ultimately did, he said: "I just don't want to give the wrong impression. It's like 'alright I don't want to sign. I want a lawyer[.'] That makes me like to you guys saying [']screw you. I don't wanna talk to you.['] I do wanna talk." Mahr and Heale repeatedly attempted to clarify if defendant understood his rights and was willing to speak to them. Defendant finally said that he understood and readily acknowledged that the marijuana plots were his. He said he personally consumed most of it but sold some to acquaintances to supplement his income, which, he said, despite his best efforts, was not enough to cover his living expenses.

The investigating officers obtained two search warrants, one for defendant's vehicle, in which nothing evidential was located, the second warrant, for his home. In his apartment, officers found 1383.04 grams (roughly 3.05 pounds) of marijuana, as well as paraphernalia including rolling papers, bowls, fertilizer, and a scale.

## II.

Before trial, the judge denied defendant's motion, based on alleged violations of Miranda principles, to suppress his statements. The court also

conducted a <u>Faretta</u>[2] hearing and addressed defendant's request for hybrid representation, in which he sought to be permitted to represent himself only during opening and closing. Defendant also unsuccessfully moved for the dismissal of the indictment count charging him with maintaining or operating a CDS facility.

After the court denied defendant's application for hybrid representation, defendant sought leave to represent himself throughout the entire trial. The court granted the request, but appointed standby counsel. Prior to jury selection, defendant discharged his standby counsel. The judge instructed her to remain in the gallery.

Defendant testified at trial, admitting that he used approximately three pounds of marijuana per year. The extra marijuana he grew he said he sold to two or three of his friends in order to pay his bills. On cross-examination, defendant confirmed that he went to the site on the day of his arrest to tend to his marijuana plants. He planted the seeds, fertilized the soil, surrounded the plants with mesh in order to protect them, and had previously harvested some. Defendant agreed he owned the marijuana plants found at the site and the marijuana found in his apartment. Defendant told the jury that he had used and

---

[2] <u>Faretta v. California</u>, 422 U.S. 806 (1975).

grown marijuana since he was a teenager, and suggested that the use of the drug should not be criminal.

After deliberating for less than four hours, the reconstituted jury[3] sent a note to the judge reading "We the jury have determined that we cannot come to a consensus in the charges as filed and evidence as presented. What can be done?" The court told the jury the following:

> I will just read you what the courts have been instructed to do in a case like this. Just to reiterate something that I said before, it's your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, change your opinion, if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are [not] partisans, you are judges, you are judges of the facts.
>
> So I'm also going to ask you if you have any questions that you'd like me to answer such as that, I'm available to do that. So if you have any questions about the law, if you have any questions about the evidence,

---

[3] One juror had to be replaced by an alternate on the morning of October 28, 2015, and the jury was instructed to begin deliberations from the beginning and disregard prior deliberations. The reason for the replacement and the continuation of deliberations with a new juror are not on appeal.

A-2904-15T2

we can, I can try to explain anything that might be of a problem in your deliberations.

And I wanted to indicate that there are four offenses charged in this indictment. They are separate offenses by separate counts in the indictment. Your determination of whether the State has proven the defendant guilty of the crimes charged in the indictment beyond a reasonable doubt, the defendant is entitled to have each charge considered separately by the evidence which is relevant and material to that particular charge, based on the law as I have given it to you. Therefore, all charges are to be considered individually and separately.

So hopefully that helps, but if you go back in, I would ask that if you have as a result of those new instructions to you, actually the last part was not new, it was actually part of the instructions that I gave you in the beginning, that everything is to be treated separately, but if you have any questions, write them down and I will try to answer them, specifically with respect to the jury charge or anything like that. All right. So I hope that helps. I'm going to send you back in. I have to do something on the video just for a couple of minutes but I'll be available to answer any questions.

Less than an hour later, the jury sent out a note which read: "We, the jury, have after consideration of the facts of this case and the charges as applied cannot come to a consensus on three of the four charges. We have discussed, deliberated, followed written instructions and verbal and simply cannot come to an accord for the Court." The court again instructed the jury:

All right. Good afternoon. I have received a note from your Foreperson, this is the second note, and it

indicates that, "We, the jury, after consideration of the facts of this case and the charges as applied cannot come [to] a consensus on three of the four charges. We have discussed, deliberated, followed written instruction[s] and verbal and simply cannot come to an accord for the Court."

The Court has the obligation to determine whether or not a jury should continue to proceed, and in this case, there was a lot of time spent on this case, there was a lot of effort placed into the case by both sides. The Court's feeling is that you as a constituted jury began your deliberations at approximately 9:30, 10:00 this morning. The deliberations that you engaged in yesterday, again you were told to start from the very beginning.

So this Court has to be mindful of that and I'm instructing you that, requiring you to continue with your deliberations. I would suggest to you that there is that jury verdict form, I don't know whether you filled that out already with respect to the one count that you decided on. If you have, you're to go back in to discuss again, as I said before, each charge separately and individually so that you can consider the evidence as it applies to each of those charges and give it more effort with respect to coming to a consensus on those charges.

I'm going to send you back in and ask you to continue to deliberate on all of the charges. Thank you.

The jury found defendant guilty of counts one and two, and not guilty of counts three and four. After the jury rendered its verdict, defendant requested his standby counsel to argue for judgment notwithstanding the verdict, based on the alleged inconsistency in the verdict——that the jury convicted defendant of

A-2904-15T2

operating a CDS facility, while acquitting him of possession with the intent to

distribute. The application was denied.

During the sentence hearing, the judge made the following remarks:

> The Court obviously went through this trial with [the prosecutor] and [] Peditto representing himself. . . . Peditto admitted smoking marijuana since he was 15 years old. Watching him during this trial, watching him in the way he conducted himself led me to believe . . . that some of his cognitive brain functions appear to be affected by smoking marijuana . . . . His mental process at times seemed to me to be confused. He -- it's indicated in the presentence report he has difficulty reading. He clearly has deficient social skills in this Court's opinion. According to the presentence report, he has limited employment capabilities. According to his brother's letter, he has limited employment capabilities.
>
> . . . .
>
> Your defense, . . . as you see yourself, this spokesperson as some of your misguided supporters call you a zealot, a fighter for a cause, . . . in my opinion it was short-sighted, it was inept, it was reckless, and it was foolhardy.
>
> Your behavior during the trial convinced me that your long-term marijuana use and the effects of that made your actions and your reactions uncontrollable, specifically after you had not used in my opinion by lunchtime and thereafter in the afternoon your behavior was completely different at times than during the morning sessions. You appeared to as you just used the term morph into acting like a spoiled child who was obstinate, disrespectful of everyone, and oblivious to common sense and common decency.

That's my reaction to the way you handled yourself during trial. If for some reason that wasn't clear to you, obviously you have as you use the word a disconnect with reality. You need help, sir. . . .

III.

Defendant raises six points on appeal:

POINT I
THE MOTION TO SUPPRESS MR. PEDITTO'S STATEMENTS SHOULD HAVE BEEN GRANTED

POINT II
THE TRIAL COURT SHOULD NOT HAVE ALLOWED MR. PEDITTO TO REPRESENT HIMSELF IN LIGHT OF HIS CLEARLY IMPAIRED MENTAL FUNCTIONS WHICH ADVERSELY AFFECTED HIS ABILITY TO REPRESENT HIMSELF, AND THE COURT SHOULD HAVE ORDERED STANDBY COUNSEL TO TAKE OVER THE DEFENSE WHEN IT BECAME INCREASINGLY APPARENT THAT MR. PEDITTO WAS MENTALLY INCAPABLE OF REPRESENTING HIMSELF

POINT III
THE DEFENSE MOTION FOR A JUDGMENT OF ACQUITTAL AS TO COUNT ONE OF THE INDICTMENT SHOULD HAVE BEEN GRANTED DUE TO THE LACK OF EVIDENCE THAT MR. PEDITTO'S RESIDENCE WAS USED IN A CONTINUING COMMER[CI]AL ENTERPRISE

POINT IV
THE TRIAL COURT SHOULD HAVE DECLARED A MISTRIAL WHEN THE JURY INDICATED IT

10

COULD NOT REACH A DECISION (NOT RAISED BELOW)

POINT V
THE CONVICTIONS SHOULD BE REVERSED DUE TO THE INCONSISTENCY OF THE JURY'S VERDICTS

POINT VI
THE COURT IMPOSED AN ILLEGAL SENTENCE FOR
COUNT TWO OF THE INDICTMENT

Three of the issues raised should be preliminarily addressed. Two do not warrant much discussion in a written opinion, see R. 2:11-3(e)(1)(E), and the proper resolution of the third is not disputed.

Defendant contends in Point III that the State failed to establish all the necessary elements of maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4. The statute states a person who knowingly operates "any premises, place or facility used for the manufacture of . . . marijuana in an amount greater than five pounds or ten plants . . . is guilty of a crime of the first degree." N.J.S.A. 2C:35-4. "Manufacture" is defined in N.J.S.A. 2C:35-2 as the "production, preparation, propagation, . . . or processing of a controlled dangerous substance." Relying upon State v. Kittrell, 145 N.J. 112, 124 (1996), defendant contends that in order to obtain a conviction, the State must prove the facility was maintained for commercial distribution. The point, however, is not

supported by Kittrell.  In fact, the case explains the statute's broad reach, which includes this scenario:  "the Legislature's intention to criminalize the production of controlled dangerous substances for distribution, in any premises, is reflected in the commentary accompanying the statute."  Id. at 126 (emphasis added). That defendant did not have a center for commercial distribution is irrelevant.

Point V also lacks merit.  Defendant's convictions need not be reversed because of an alleged inconsistency in the jury's verdicts.  In our system, inconsistent verdicts are accepted.  See State v. Banko, 182 N.J. 44, 53 (2004). As the Court has said, "[a]n inconsistent verdict may be the product of jury nullification."  Id. at 54.  Jury nullification is the very defense theory defendant espoused in the trial.

Furthermore, as the Court in Banko went on to say, such verdicts may be the product of "lenity, compromise, or even mistake."  State v. Goodwin, 224 N.J. 102, 116 (2016).  Whatever the jury's reason for its verdict, the seeming inconsistency does not negate the convictions.

Finally, the State concedes that the judge's sentence on fourth-degree possession of CDS was illegal.  It is therefore remanded for a new sentence hearing and nothing further need be said with regard to Point VI.

IV.

A-2904-15T2

Turning to defendant's Point I, it is well-established that the State cannot present a defendant's incriminating statement, elicited by law enforcement officers through "custodial interrogation," unless the suspect has waived his or her Miranda rights. Miranda, 384 U.S. at 436. The State must prove beyond a reasonable doubt that the suspect did so "voluntarily, knowingly and intelligently." Id. at 444; see State v. Presha, 163 N.J. 304, 313 (2000).

It is also well-settled that once a suspect indicates the desire to remain silent, "the interrogation must cease." Id. at 473-74. If an individual "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." Id. at 444-45.

A court looks to the totality of the circumstances in order to decide the issue, including a defendant's individual characteristics and the nature of the questioning. State v. Galloway, 133 N.J. 631, 654 (1993). As always, a trial court's findings of fact are entitled to deference so long as supported by sufficient credible evidence in the record. State v. Elders, 192 N.J. 224, 243-44 (2007). "Relevant factors to be considered include the suspect's age, education and intelligence, advice concerning constitutional rights, length of detention, whether the questioning was repeated and prolonged in nature, and whether physical punishment and mental exhaustion were involved." Galloway, 133 N.J. at 654 (citations omitted).

"Although a clear assertion of either right must of course be scrupulously honored, officers confronted with an ambiguous invocation are authorized to make inquiry in order to clarify the suspect's intent." State v. Diaz-Bridges, 208 N.J. 544, 569 (2011); State v. Alston, 204 N.J. 614, 623 (2011). If a suspect's "statements are so ambiguous that they cannot be understood to be the assertion of a right, clarification is not only permitted but needed." Alston, 204 N.J. at 624. In such cases, the fact-sensitive inquiry regarding the totality of the circumstances is particularly important. Diaz-Bridges, 208 N.J. at 565.

In responding to an ambiguous statement, officers must limit themselves to clarification, "not questions that operate to[] delay, confuse, or burden the suspect in his assertion of his rights." State v. Johnson, 120 N.J. 263, 283 (1990) (citation omitted). Under the totality of the circumstances approach, not every equivocal reference to an attorney is an invocation of the right to counsel requiring the cessation of police interrogation.

"When faced with a trial court's admission of police-obtained statements, an appellate court should engage in a 'searching and critical' review of the record to ensure protection of a defendant's constitutional rights." State v. Hreha, 217 N.J. 368, 381-82 (2014) (citation omitted). However, we "do not independently assess evidence as if we [were] the trial court." State v. Maltese, 222 N.J. 525, 543 (2015), cert. denied, ___ U.S. ___ (2016). "To warrant reversal, defendant

must show not only that admission of his statement was error, but that it was error 'of such a nature to have been clearly capable of producing an unjust result.'" Ibid. (citing R. 2:10-2).

We consider defendant's claim of error against this backdrop. Defendant initially argues that the absence of a signed Miranda card, or the failure of the officers to produce or read from a Miranda card at the scene of the arrest, raises doubt as to whether they were given. This point lacks significance because the only information officers elicited at the scene was pedigree information, which falls outside the scope of Miranda. State v. Mallozzi, 246 N.J. Super. 509, 515 (App. Div. 1991). In any event, in the videotaped interview, Mahr told defendant that he was going to read him his Miranda rights, and mentioned that they had already been read when defendant was arrested. Defendant does not disagree with Mahr's assertion, and in fact, asked the officer what would have happened if he had not responded.

Defendant also contends that some of his statements during the videotaped interview should had been construed as requests to have a lawyer present. Defendant certainly gave confused and confusing answers to the officers' questioning. But it is clear from the interview, as the judge found, that he spoke to the officers voluntarily. When he made ambiguous statements using the word "lawyer," the officers promptly obtained clarification.

The judge found as a fact that defendant was not requesting an attorney, but stating that he thought that to do so would not be in his best interests—that his best interests mandated that he talk to the officers. From the start, defendant opined that he should not be prosecuted for marijuana, and it was for that reason he spoke with the officers. The court's findings are entitled to deference. Maltese, 222 N.J. at 543. Our review only corroborates them.

V.

A defendant in a criminal matter is afforded the right to counsel under the Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey State Constitution. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. Courts have also found that embodied in the Sixth Amendment right to counsel is the right for a defendant to dispense with counsel's assistance and represent himself. Faretta, 422 U.S. at 814.

When faced with an "unequivocal request for self-representation," a court must engage in the inquiry outlined in State v. Crisafi, 128 N.J. 499, 510-12 (1992), including explaining to the defendant the nature of the charges, any possible defenses, the range of punishment, the risks that come with self-representation, the requirement that defendant abide by the rules of court, and the inadvisability of proceeding without the assistance of counsel. State v. Figueroa, 186 N.J. 589, 593 (2006). In State v. Reddish, 181 N.J. 553, 594

16

(2004), the Court expanded this inquiry to include additional issues to be addressed before permitting defendant to proceed pro se, including:

> whether defendant will experience difficulty in separating his roles as defendant and counsel; whether defendant understands that he not only has the right not to testify, but also the right not to incriminate himself in any manner; whether he understands that he could make comments as counsel from which the jury might infer that he had knowledge of incriminating evidence (and the difficulty in avoiding such comments); and whether he fully understands that if he crosses the line separating counsel from witness, he may forfeit his right to remain silent and subject himself to cross-examination by the State.

A defendant who chooses to proceed pro se does so in the face of "likely detriment." Reddish, 181 N.J. at 580. The New Jersey Supreme Court said "that a defendant who represents himself 'relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.'" Ibid. (citing Faretta, 422 U.S. at 835). However, it is the defendant, and not his lawyer or the State, who will bear the personal consequences of a conviction. Faretta, 422 U.S. at 834. Thus, "[i]t is the defendant . . . who must be free personally to decide whether in his particular case counsel is to his advantage." Ibid. So, "although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" Ibid. (citation omitted).

Defendant now claims in Point II that the court erred by allowing him to proceed pro se. Undoubtedly, had the court denied this request, we would now face the argument that the court erred because it did not allow him to represent himself.

Defendant describes in detail how he was "clueless regarding the presentation of a criminal defense." However, "technical legal knowledge, as such, [is] not relevant to an assessment of [defendant's] knowing exercise of the right to defend himself." Faretta, 422 U.S. at 836. Defendant insisted on waiving his right to the assistance of counsel, despite repeated efforts by the court to dissuade him from doing so.

The court clearly explained the charges against defendant and the sentence exposure. The judge told defendant that because of his unfamiliarity with the rules of court, "it may result in you having some inability to present the case in a proper fashion on your own behalf." Defendant responded that he understood and nonetheless wished to proceed pro se. Defendant was sworn in and affirmed under oath his belief that he is "the only person that can actually express [him]self in the way [he] want[ed] to express it to the jury" and that he believed he had "the appropriate ability to do that."

Prior to jury selection, defendant even attempted to discharge standby counsel altogether. He told the court, "I don't want her representing me in any

way, shape, or form." Counsel remained at the judge's direction, sitting in the gallery. Apparently satisfied with the arrangement, defendant consulted standby counsel occasionally throughout the trial and even periodically asked her to speak on his behalf.

The court's concern about defendant's ability to present a good defense, however, "no matter how well-intentioned, cannot override defendant's exercise of his right to decide to represent himself." State v. King, 210 N.J. 2, 21 (2012). As in King, "[n]othing within the [court's] colloquy [with defendant] indicated that defendant lacked the competency to make that choice." Ibid. This defendant had a highly personal perspective of the offense and followed through on this view in the trial, having been fully advised of the risks were he to fail.

It is also noteworthy that defendant did not entirely fail in his self-representation. He was acquitted on two out of the four counts, despite his undeniable arrest at the site of seventeen marijuana plants as he set about to tend to his crop.

Defendant had disadvantages similar to other self-represented defendants–lack of knowledge about the law, and a lack of familiarity with courtroom procedures and evidence rules. But defendant's personality quirks, even if the judge in sentencing attributed them to the effect of a lifetime of

marijuana consumption, did not warrant a competency evaluation mid-trial or other interruption to the proceedings.

The court had to respect defendant's position to exercise his right to represent himself. See Faretta, 422 U.S. at 806. In exercising that right, defendant conveyed his strongly held beliefs regarding his situation to the jury. His request that he directly address the jury at opening and closing, but employ counsel to do the rest, arose from his desire to argue this political point to the jury–that marijuana use should be legal and that he should not be prosecuted. That the judge allowed the matter to move forward as defendant wanted was not error, much less plain error. See R. 2:10-2.

## VI.

Finally, defendant contends in Point IV that the judge should have declared a mistrial when the jury indicated they were unable to reach a decision. Defendant did not object to the court's Czachor[4] Model Jury instruction or request a mistrial. See Czachor, 82 N.J. at 405; New Jersey Model Jury Charges, Criminal, No. 4.190 (1978). Thus, we review this contention under the plain error rule. R. 2:10-2.

---

[4] State v. Czachor, 82 N.J. 392, 407 (1980).

"A judge has discretion to require further deliberations after a jury has announced an inability to agree." State v. Adim, 410 N.J. Super. 410, 423 (App. Div. 2009). In exercising this discretion, the court should consider "such factors as the length and complexity of [the] trial and the quality and duration of the jury's deliberations." Czachor, 82 N.J. at 407. However, exercise of this discretion is not appropriate "if the jury has reported a definite deadlock after a reasonable period of deliberations." Adim, 410 N.J. Super. at 423-34 (quoting Czachor, 82 N.J. at 407) (emphasis added).

Here, the judge initially read the Czachor instruction as part of the general instructions, and provided a written copy to the jurors for their use during deliberations.

The jury was sent to deliberate at 9:25 a.m. on October 28. At 1:40 p.m., less than four hours later, the jury indicated it could not come to a consensus and asked for guidance. The court repeated the Czachor charge to the jury and added, as we have earlier said, that he was available to answer questions about the law, the evidence, or "try to explain anything that might be a problem in your deliberations." The court also reiterated that the four charges in the indictment were to be considered separately. The jury then resumed deliberations at 1:47 p.m.

At 2:40 p.m., the jury sent another note that they could not reach a consensus on three of the four charges. The judge discussed the matter with defendant and the prosecutor, concluding that the jury had not deliberated long enough for him to declare a hung jury on three of the four charges. The parties did not object. The court then instructed the jury to resume deliberations without objection. Defendant now argues that the judge's failure to repeat the Czachor charge a third time was error, and that his comments otherwise unduly influenced the jury to reach a verdict.

The judge's supplemental instruction, however, merely requested that the jury take more time to deliberate. There was no focus on dissenting jurors, improper pressure to reach a conclusion, or any other inappropriate commentary. Although the judge did not repeat the Czachor language, the jurors had already heard the charge twice, and had it in written form. Thus, this argument also lacks merit. The jury was not unduly influenced to reach a verdict, nor was there any legal justification for a mistrial.

Affirmed, with the exception of a remand for resentencing on count two.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2904-15T2